ALLEN LUCAS, Administrator, *vs.* NEW BEDFORD AND TAUNTON RAILROAD COMPANY.

A person who enters the cars of a railroad corporation, not as a passenger, but for the purpose of assisting an aged and infirm relative to take a seat as a passenger, must, in order to maintain an action against the corporation for an injury sustained while leaving the cars, show that he exercised due care, that the corporation were wanting in ordinary care, and that such negligence was the cause of the injury; and if he attempts to leave the cars after they have started, or, finding them in motion as he is going out, persists in making progress to get out, cannot maintain such an action, if his attempt causes or contributes to the injury; even if the corporation give him no special notice of the time of the departure of the cars, and are guilty of negligence in starting the cars, and in a jerk occurring after the first start, which negligence also contributes to the injury.

ACTION OF TORT, originally brought by the plaintiff and wife, and, upon her decease, prosecuted by him alone, after taking out letters of administration on her estate.

The declaration alleged that Lucy Sherman, an aged and infirm aunt of the wife, purchased of the defendants at New Bedford a ticket for Taunton; that, by reason of her age and infirmity, said Lucy was unable to enter and take a seat in the cars without assistance; that the defendants and their servants neglected to render such assistance; that the female plaintiff, for the purpose of rendering such necessary aid, entered the defendants' cars with said Lucy, and immediately, and without unnecessary delay, attempted to leave the cars, and, while so doing, the cars were suddenly and violently, without notice, and carelessly and negligently, set in motion, whereby the female plaintiff was thrown from the platform of the car under the wheels, and her arm and leg severed from her body; that the defendants did not use due care in putting the cars in motion, or giving notice; and the plaintiffs did use due care.

The answer put in issue most of the facts stated in the declaration; and also averred that the defendants and their servants had no notice that said Lucy was unable to enter the cars without assistance; denied that the female plaintiff was lawfully in the cars, or legally entitled to be notified of the starting

of the same; and averred that, if so entitled, she was sufficiently notified, and did not attempt to leave the car upon such notice, but neglected to do so until the cars were in motion, and then carelessly and recklessly jumped from the car; and that the injury suffered was in consequence of her own negligence and recklessness, and not of any want of care, skill and prudence on the part of the defendants.

At the trial, before *Thomas*, J., the plaintiff introduced evidence tending to show that the aunt of his wife had been visiting at his house in New Bedford, and was about to return to her home in Carver by way of Taunton, and purchased a ticket of the defendants for that place; that she was aged and infirm, affected by disease of the heart, and unable to enter the cars and take a seat there without assistance; that she was, in fact, assisted to get upon the platform of the car by the plaintiff's wife, and some one who offered assistance without being asked, and the plaintiff's wife then went with her into the cars.

There was conflicting evidence upon the following questions. Whether the great bell of the station and the smaller bell inside the station were, both or either of them, rung, in conformity with established usage and the rules of the defendants; whether the customary notice from the conductor, of " all aboard," was given, or the bell upon the engine rung, as usual, before starting; whether the cars were started with a violent jerk; whether the plaintiff's wife, after entering the cars and placing her aunt in a seat, sat down herself—the defendants offering evidence of her declarations, that, the cars not being ready to start, she went in and took a seat with her aunt, and was sitting there conversing with her, when her aunt spoke to her and told her the cars were moving; how long a time she remained in the car; whether she was on the platform of the car, and was thrown therefrom by a jerk of the engine, or attempted to jump therefrom, and so was injured; whether the cars had begun to move before she started to leave them, or whether the cars started at the time she had reached the door of the car. But it was admitted that " she went out of the door of the car, on to the platform, after the cars had begun to move."

6*

The fall, or jump, and the consequent injury were established by the evidence.

In this state of the contested and uncontested facts, and after the evidence was closed, the presiding judge suggested to the parties that the instructions to the jury would be as follows:

" There is no evidence of any request to the servants of the defendants to render any assistance to Mrs. Sherman in getting into the cars, or of the knowledge of the defendants or their servants that she needed such assistance, or of any neglect to render necessary assistance on their part, so as to make necessary the entry of Mrs. Lucas for that purpose.

" There is no evidence that she was forbidden to enter the cars, or entered them against any regulation or known usage of the defendants.

" The relation of a common carrier of passengers to a passenger, and the duties and liabilities growing out of that relation, did not exist between the defendants and Mrs. Lucas. The rule of law requiring of carriers of passengers the most exact diligence and care, and rendering them liable for all accidents which sound judgment, skill and the most vigilant oversight could have prevented, does not apply to the case at bar. Such responsibility grows out of the relation or contract of carrier and passenger, and the compensation is or is supposed to be graduated accordingly.

" Mrs. Lucas was upon the premises and in the car of the defendants only upon an implied license or permission. In relation to persons upon their premises or in their cars, not as passengers with or without hire, or by the special license or instance of the defendants or their servants, the defendants are bound only to the use of ordinary care, and are liable only for the want of ordinary care.

" Though the law would require of railroad companies, as common carriers of passengers, great exactness and care in regulating the departure of trains and in the giving notice to passengers of such departure, such degree of exactness and care is not required in relation to persons who are not passengers with or without compensation, or who are not upon the

premises at the instance or request of the company; but in the latter case the company are bound only to the use of ordinary care.

" The rules and regulations prescribed by a railroad company in relation to the departure of trains, and for giving notice to passengers, do not extend to persons who are not passengers with or without compensation, or who are on the premises without request or instance of the company; and therefore the omission to comply with such regulation is no ground of complaint by one who is not a passenger, if, under the circumstances, the company used ordinary care.

" The law has not imposed upon the railroad company the duty of giving special notice of the time to leave to persons who are not passengers with or without compensation, or who are not there at the instance or request of the company; nor of prescribing by rules a system or method for giving such notice to such persons. Persons entering the cars, who are not passengers, and without the request or instance of the company, are bound to know the time of departure, (if such time be fixed, and reasonable public notice given thereof,) and to leave the cars in such season before the time so fixed as would enable them to get out with care before the cars are set in motion. With the arrival of time fixed for the departure of the cars, the implied license or permission ceased, and with it the liability of the defendants except in case of misfeasance or gross negligence.

" If Mrs. Lucas attempted to leave the cars after the train was started, or, finding the cars in motion as she was going out, persisted in making progress to get out, and such attempt was the cause of, or contributed in any degree to the accident, the plaintiff cannot recover.

" The burden of proof is upon the plaintiff, to show the exercise of due care upon the part of Mrs. Lucas; to show negligence on the part of the defendants, under the rules above stated; and that such negligence was the cause of the injury Mrs. Lucas sustained. So that, if the jury are satisfied there was negligence in moving the train, and in the jerk occurring after the first starting of the train, the defendants would not be liable if such

jerk, and the want of due care on the part of Mrs. Lucas in attempting to step from the car, combined to produce the injury."

Under these rulings, to which the plaintiff excepted, a verdict was taken by consent for the defendants, and the case reported to the whole court.

*S. Bartlett*, for the plaintiff. 1. The case finds that the age and health of the aunt of Mrs. Lucas required assistance to enable her to enter and take her seat in the cars, and that such assistance was rendered by Mrs. Lucas and a stranger. It was thence to be inferred that the reliance of the defendants in such cases was upon the aid of friends or of strangers; or, if that was doubtful, it should have been submitted to the jury, without instructions putting the " implied license" to Mrs. Lucas in contrast with " a special license, instance or request of the company," and thus placing Mrs. Lucas on the footing of persons who were tolerated by usage in entering the station or cars, for their own business or motives, wholly unconnected with the business of the defendants.

2. If the instructions permitted the jury to find that Mrs. Lucas was there at the " implied request" of the defendants, the instruction as to the degree of care required of the defendants tended to mislead the jury. It was based upon the proposition, that the duty of the corporation to use high and exact diligence depended on the contract or relation, gratuitous or otherwise, of the passenger and the carrier; whereas it " is obviously founded on the great principle of social duty, that every man in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another." *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 55, 56. S. P. *Philadelphia & Reading Railroad* v. *Derby*, 14 How. 468. *Marshall* v. *York, Newcastle & Berwick Railway*, 11 C. B. 655.

The law requires of a railroad corporation, in favor even of persons placed by the mere license of the corporation within the reach of peril, a degree of care, which is not fitly expressed by the term " ordinary." The instruction should have been, at

least, that the defendants were bound to use reasonable care, having regard to the circumstances, and especially to the defendants' own usual course of business, by ringing bells, and the like. *Bradley* v. *Boston & Maine Railroad*, 2 Cush. 539. If the plaintiff was rightly .here, she was entitled to the same care that is due a foot passenger in the highway; and that has been said to be " all possible diligence." Story Bailm. § 599 *a.*

But even if the term " ordinary care " was rightly so applied, the instructions were objectionable, in making the omission of the defendants to comply with their own rules and regulations, as to the various modes of giving notice of the departure of trains, no ground of complaint by the plaintiff, although the plaintiff used ordinary care; and in declaring that this omission of the defendants to comply with their own usages was to be excluded in determining whether they had used ordinary care.

3. The instructions as to what would constitute common care and prudence on the part of Mrs. Lucas, assume, without submitting it (though a pure question of fact) to the jury, that the habitual notices of bells and the oral cry of the conductor, although intended to give notice of the starting of the cars, are not designed as admonitions to other persons in and about the cars, as well as to passengers; whereas, so long as the usual habit of railroad corporations permits the station to be crowded by the friends of passengers, or by mere curious spectators, decent regard for their safety requires some notice beyond the printed time regulations. The effect of the instruction, as applied to the evidence, was, that in not leaving the cars before the time fixed by the regulations, Mrs. Lucas was wanting in ordinary prudence; and thus disposed of the case.

The instruction, that if Mrs. Lucas, finding the cars in motion as she was going out, persisted in making progress to get out, and such attempt contributed in any degree to the accident, the plaintiff could not recover, although the defendants were guilty of negligence, required of a person placed by the wrongful conduct of the defendants in an exciting and alarming situation, the usual degree of care and prudence which the law would otherwise require; whereas all that is required, under such cir-

cumstances, is such a degree of care and prudence as the situa-
tion of the party would naturally or probably permit. *Chaplin*
v. *Hawes*, 3 Car. & P. 554. *Lynch* v. *Nurdin*, 1 Ad. & El. N.
R. 29. *Robinson* v. *Cone*, 22 Verm. 213.

That instruction is also open to the further difficulty, that it
left to Mrs. Lucas no *locus pœnitentiæ*, but defeated the plain-
tiff's action, although Mrs. Lucas, on arrival on the platform,
seeing the peril and attempting to return, was, by a grossly neg-
ligent jerk of the engine, precipitated under the wheels.

*J. H. Clifford*, for the defendants.

METCALF, J. 1. The ruling, that the burden of proof was on
the plaintiff to show that Mrs. Lucas exercised due care, that the
defendants were guilty of negligence, and that such negligence
was the cause of her injury, was undoubtedly correct. See *Lane*
v. *Crombie*, 12 Pick. 177; *Holbrook* v. *Utica & Schenectady Rail-
road*, 2 Kernan, 236. Indeed, its correctness has not been ques-
tioned by the plaintiff's counsel.

2. And we think it perfectly clear that Mrs. Lucas, at the time
of the injury, did not sustain such a relation to the defendants
as imposed on them any extraordinary care; that they were not
bound to give her special notice of the time of the departure of
the train; and that, if they exercised ordinary care, it was the
most that the law exacted of them. In *Lygo* v. *Newbold*,
9 Exch. 302, the plaintiff, without the defendant's authority, but
by permission of the defendant's servant, rode in a cart with her
goods, which the defendant had contracted to carry for her. The
cart, being insecure, broke down, and the plaintiff was injured.
The court held that the defendant was not liable for that injury,
the plaintiff not being rightfully in the cart.

3. The chief question made by this plaintiff is, whether the
law was rightly stated in the two following rulings which the
judge proposed to make: *First.* That if Mrs. Lucas attempted
to leave the cars after the train was started, or, finding the cars
in motion as she was going out, persisted in making progress to
get out, and such attempt was the cause of, or contributed in
any degree to, the accident, the plaintiff could not recover.
*Second.* That though there was negligence of the defendants in

moving the train, and in the jerk occurring after the first starting of the train, the defendants would not be liable if such jerk, and the want of due care on the part of Mrs. Lucas in attempting to step from the car, combined to produce the injury.

It is objected to the first of these rulings, that it assumed, what should have been left to the jury, that Mrs. Lucas was not entitled to special notice of the starting of the train. We have already disposed of this objection, by deciding that she was not entitled to such notice. It is further objected that the effect of this was, that Mrs. Lucas was wanting in ordinary care in not leaving the cars before the time of their starting. But this was not its precise effect. Its effect was, that she was wanting in ordinary care in attempting to leave the cars when they were in motion. And of this it is impossible for us to entertain a doubt.

It is objected to the second ruling, that it held Mrs. Lucas, who was placed in an exciting and alarming situation by the defendants' wrong conduct, bound to exercise the usual degree of care which the law otherwise requires, that is, ordinary care. And it has been sometimes held that the rule respecting the exercise of ordinary care by a plaintiff does not apply to persons incapable of exercising it; as in the instance of young children. The cases of *Lynch* v. *Nurdin*, 1 Ad. & El. N. R. 29, and *Robinson* v. *Cone*, 22 Verm. 213, cited by the counsel for the plaintiff, were of that kind, and do not support this action. In the other case cited by him, *Chaplin* v. *Hawes*, 3 Car. & P. 554, the injury was caused by the collision of the carriages of A and B. Chief Justice Best held that A might recover of B, whose carriage was where it ought not to have been and where A's might rightfully have been, though A might have avoided the injury by stopping or turning aside. The ground on which the judge proceeded was, that the meeting of the parties was sudden, and " on the sudden a man may not be sufficiently selfpossessed to know in what way to decide; and in such a case the wrongdoer is the party who is to be answerable for the mischief, though it might have been prevented by the other party's acting differently." But that case is not like this. In that case, A was where he had a right to be when the danger first appeared; but,

in the present case, Mrs. Lucas, when the train started and when the jerk occurred, was where she had no right to be. And conduct, which the law requires of those who wrongfully bring themselves into an emergency, is not to be measured by that which the law excuses in those who are wrongfully brought into an emergency by others.

The other objection to the second ruling, that it left to Mrs. Lucas no *locus pœnitentiæ,* is to be answered in the same manner as the first objection. She was in the wrong from the beginning. The exceptions state that " she went out of the door of the car, on to the platform, after the cars had begun to move." ·

No other objection was taken, in argument, to the foregoing two rulings at the trial. And we find that they conformed to the rule of law laid down in numerous cases. See *Parker* v. *Adams,* 12 Met. 415, and other cases cited in Angell on Carriers, §§ 556–566. More recent decisions have modified the rule, so that it is now expressed thus: Though there may have been negligence on the part of the plaintiff, yet unless he might, by the exercise of ordinary care, have avoided the consequences of the defendants' negligence, he is entitled to recover. *Bridge* v. *Grand Junction Railway,* 3 M. & W. 248. *Davies* v. *Mann,* 10 M. & W. 549. *Thorogood* v. *Bryan,* 8 C. B. 115. *Clayards* v. *Dethick,* 12 Ad. & El. N. R. 439. *Moore* v. *Central Railroad,* 4 Zab. 268. It has therefore occurred to us to inquire whether the rule ought not to have been expressed by the judge in its modified form. And we are of opinion that if, in strictness, it ought to have been, (of which we express no opinion,) yet that the plaintiff could not have availed himself of this objection, if he had thought fit to make it; because the evidence showed conclusively that Mrs. Lucas, by exercising ordinary care, that is, by remaining in the car, might have avoided the consequences of the defendants' negligence. The verdict therefore could not have been for the plaintiff, if the rule had been stated in its modified form. And when a party to a suit cannot have suffered by an error or an omission in the ruling of the court, he cannot have a new trial because of such error or omission.                    *Judgment on the verdict for the defendants.*