STEPHEN MCDONALD *vs.* BOSTON AND MAINE RAILROAD.

York. Opinion April 20, 1895.

*Railroad. Passenger. Negligence.*

It is the obvious duty of a railroad company to stop its train at a station a sufficient length of time to give all passengers desiring to stop there a reasonable opportunity to alight upon the platform with safety. But the failure of the company to stop its trains at a station as it ought to do, or to stop it for a sufficiently long time, does not justify a passenger in leaving a moving train; his proper course is to be carried on until the train stops, and if he sustains pecuniary or other loss from being carried beyond his station his remedy lies in an action for damages.

It is an established rule of law that, in the absence of anything to create excitement or cause alarm, the attempt to leave a car while the train is in motion, by jumping from the steps of the car to the platform of the station is *prima facie* evidence of negligence on the part of the passenger.

The mere circumstance that the plaintiff is being carried past one station to the next station only a few rods further from his home, is insufficient to exonerate him from negligence in attempting to alight from a moving train.

Under such circumstances, in suggesting that the passenger should "jump with the train," or "not jump sideways," *held:* that it was plainly the intention of the conductor, not to advise the passenger to leave the train, but to remind him of the safest method of doing so, if he was resolved upon making the attempt.

ON MOTION AND EXCEPTIONS.

This was an action on the case in which the plaintiff recovered a verdict for injuries received by him in alighting from the defendant's passenger train.

The acts of negligence by the defendant, as alleged by the plaintiff, were in that while he was alighting from said train, the defendant carelessly, negligently, and violently started and caused to be started said train, throwing the plaintiff from said train suddenly and violently to the platform; and not stopping the train sufficiently long for him to get out.

Plea was the general issue. After all the evidence in the case had been taken out before the jury, counsel for defendant moved the court to direct a verdict in its favor, which the court refused to do; and to this refusal the defendant excepted. After the verdict for the plaintiff, the defendant also filed a general motion for a new trial.

The facts as claimed by plaintiff were as follows :

About 7 P. M., July 25, 1893, he purchased a ticket at defendant's station at Saco, and took the train for Old Orchard. Before reaching that station the train stopped at the station of "Camp Ground," which was previously announced. No actual notice had been given by plaintiff to any of the trainmen that he intended or desired to stop there. He started, however, to leave the train, he says, as soon as it stopped, going towards the door in the forward end of the car, and when he reached the door he discovered that the train was in motion. He passed out upon the car platform, when, he says, the conductor told him to "jump with the train." He jumped, and was injured by falling upon the station platform and dislocating his left hip-joint. He was about fifty years of age, and had a basket containing groceries. Rain had fallen and the platform of the station was damp.

Defendant claimed that the facts were as follows :

Plaintiff's ticket being for Old Orchard, it had no actual and no seasonable, constructive notice that he wished to terminate his journey elsewhere ; that the train, however, did stop at Camp Ground, that station having been previously announced through the train, long enough to permit all to get out of whose intention so to do it had, or, exercising reasonable diligence and care, could obtain, seasonable notice, and also long enough for those desiring to get in ; that, in fact, two other persons did get out and one got in during the stop, which was from three-quarters of a minute to a minute ; that before starting the train, the brakeman looked through the door and the aisle of the rear car (where plaintiff was), and also into the car ahead of it, and saw no one either in the aisles or making any preparation to get out, then gave the signal to the conductor, who was upon the station platform, and who, after receiving a similar signal from the train baggage-master, signalled the engineer to start, which he did without jerk and in the usual manner.

The conductor then stepped upon the car platform, and was about to enter the rear door of the car immediately ahead of the rear car, when, partially turning, he saw plaintiff upon the platform, with basket in both hands, about to jump. He shouted to him, "Don't jump sidewise." Plaintiff did jump, and was injured.

*B. F. Hamilton, B. F. Cleaves and C. S. Hamilton,* for plaintiff.

Exception : There are only two grounds upon which the judge could have directed a verdict as requested :

First : That there was no evidence of negligence upon the part of the defendant — or,

Second : That the plaintiff's want of ordinary care, in all that he did, was so clearly and palpably manifest that court and jury, deciding alike, could not fail to say that he was not in the exercise of due care. Plaintiff says that there was evidence of negligence, and that the question was properly submitted to the jury.

The question of whether or not the company was negligent is one of fact, and for the jury to decide. *Webb* v. *R. R. Co.* 57 Maine, 134; *Bradley* v. *B. & M. R. R.* 2 Cush. 539.

In order for the court to take the question of negligence from the jury, it should be free from doubt. There may be extreme cases either way, where the judge's duty would be to pronounce upon the facts instead of submitting them to the jury. But where the line is doubtful between the two extremes, it is the vocation of the jury to determine the question, under such instructions from the court as may be proper and suitable to the case before them. *O'Brien* v. *McGlinchy*, 68 Maine, 555.

The question of negligence is one of mixed law and fact; the fact is to be determined by the jury on competent evidence and in accordance with the principles of law as given them by the court for their guidance. *Plummer* v. *R. R. Co.* 73 Maine, 593. Counsel also cited: *Lesan* v. *M. C. R. R.* 77 Maine, 90; *Shannon* v. *B. & A. R. R. Co.* 78 Maine, 60; *Gaynor* v. *O. C. & N. Ry. Co.* 100 Mass. 208, and cases; *French* v. *Taunton Branch R. R.* 116 Mass. 537, and cases; *Williams* v. *Grealy*, 112 Mass. 81; *Craig* v. *N. Y. N. H. & H. R. R.* 118 Mass. 432; *Copley* v. *N. H. & C. R. R. Co.* 136 Mass. 9-10; *McDonough* v. *Metrop. R. R. Co.* 137 Mass. 210; *Tyler* v. *N. Y. & N. E. R. R. Co. Ib.* 238; *Learoyd* v. *Godfrey*, 138 Mass. 324; *Lyman* v. *County Hampshire*, 140 Mass. 311; *Sonier* v. *B. & A. R. R. Co.* 141 Mass. 10; 16 Am. & Eng. Ency. pp. 465-6, and note.

Rights and duties of passenger and defendant: If defendant did not stop its train at the station a sufficient length of time to enable plaintiff, in the exercise of due diligence, to alight, that would be negligence. If the train is started while the passenger is in the act of leaving the train, and without giving him a reasonable time to alight, and an injury results, the company will be liable. Counsel cited: *Hendrick* v. *R. R.* 26 Ind. 226; *Penn. R. R.* v. *Kilgore*, 32 Pa. 292; Wood R. R. Law, pp. 1126, 1128, 1129, 1130, 1133, 1134, 1151; 2 Am. & Eng. Ency. p. 762; *Lucas* v. *T. & N. B. R. R. Co.* 6 Gray, p. 70; *Parker* v. *Springfield*, 147 Mass. 391; *Sweat*

v. *B. & A. R. R.* 156 Mass. 284; *Morrison* v. *Erie R. R.*
56 N. Y. 302; *State* v. *B. & M. R. R.* 80 Maine, 430;
*Hooper* v. *Same*, 81 Maine, 260. Motion: *Webb* v. *P. & K.
R. R.* 57 Maine, 117-133; 16 Am. & Eng. Ency. pp. 554-555,
and cases: *Bryant* v. *Glidden*, 39 Maine, 458; *Milo* v. *Gardiner*, 41 Maine, 551-2.

SITTING: WALTON, EMERY, HASKELL, WHITEHOUSE, STROUT,
JJ.

WHITEHOUSE, J. The plaintiff obtained a verdict for fifteen
hundred dollars against the defendant for an injury sustained by
jumping from a moving train at Camp Ground station between
Saco and Old Orchard. The negligence imputed to the defendant was its failure to stop the train a sufficient length of time
to enable the plaintiff in the exercise of reasonable diligence to
alight before the train proceeded. The plaintiff also claimed
that in jumping from the train he acted under the direction of
the conductor. The case comes to this court on a motion to set
aside the verdict as against evidence, and exceptions to the
refusal of the presiding justice to direct a verdict for the
defendant.

It is the opinion of the court that the verdict cannot be
allowed to stand on the evidence reported. The plaintiff fails
to establish either the defendant's negligence or his own due care.

On the evening of July 25, 1893, the plaintiff purchased a
ticket at Saco for "Old Orchard and Return," and took the local
train, leaving the former station about seven o'clock, intending
to stop at the intervening station called "Camp Ground" for
which no tickets were specially provided. The train stopped
there long enough for two passengers to alight and one woman
to get aboard the train. The plaintiff was in the rear passenger
car. He started to leave the train at sometime after it stopped,
and when he reached the forward end of his car, he discovered
that the train was in motion. He passed out upon the car
platform when the conductor, according to the plaintiff's testimony, said to him, "Jump with the train," or according to the

conductor's testimony, "Don't jump sideways." He jumped and fell upon the platform dislocating his hip-joint. Rain was falling at the time and the platform of the station was wet. Before the conductor received from the brakeman the signal to start, none of the trainmen had any notice of the plaintiff's desire or purpose to leave the train, other than that indicated by his ticket for Old Orchard. But "Camp Ground" was duly announced through the train before its arrival there; and before giving the signal to start, the brakeman looked through the doors of the two passenger cars of the train, and saw no one in the aisle and no one preparing to leave his seat in either of them. The train stopped from three-fourths of a minute to a minute. The plaintiff says he started to leave the train as soon as it stopped, but the testimony of the conductor and brakeman to the effect that he did not leave his seat until the signal to start was given, is corroborated by the testimony of Mrs. Bryant, a disinterested passenger sitting near the plaintiff in the rear car, who says the car was in motion when the plaintiff walked past her towards the door.

The plaintiff was about fifty years of age and a weaver by occupation. At this time he was returning to his home situated about half way between "Camp Ground" station and Old Orchard, a little nearer the former, and was carrying a peck basket containing some groceries. He had been "riding on this train more or less during the summer," and must have known that only a short stop was required at that time for the business at Camp Ground station. The baggage master and station agent say the stop on this occasion was of "about the usual" length.

It is the obvious duty of a railroad company to stop its train at a station a sufficient length of time to give all passengers desiring to stop there a reasonable opportunity to alight upon the platform with safety; and in this case there seems to be a preponderance of all the evidence in favor of the defendant's contention that its train did so stop at Camp Ground station on the evening in question. There was a conflict of testimony, however, and it may be questionable if the court would be

required to reverse a finding of the jury against the defendant upon this point. But the conclusion is still unavoidable that the accident was not caused by the fault of the company, but by the plaintiff's own want of ordinary thoughtfulness and prudence.

It is now an established rule of law, recognized by the decisions of our own court, and supported by the great weight of authority elsewhere, that in the absence of anything to create excitement or cause alarm, the attempt to leave a car while the train is in motion, by jumping from the steps of the car to the platform of the station is *prima facie* evidence of negligence on the part of the passenger. *Gavett* v. *Manchester & Lawrence Railroad Co.* 16 Gray, 501; *Lucas* v. *New Bedford & Taunton Railroad Co.* 6 Gray, 64. "There cannot be a doubt," says PETERS, C. J., in *Shannon* v. *B. & A. Railroad Co.* 78 Maine, 59, "that generally speaking, a passenger is not justified in getting upon or off of a moving train, unless at his own risk. If all you know of it is that a passenger jumps from a train in motion and is injured, you would charge him with carelessness for the act. The act is *prima facie* negligence." In 2 Wood on Railroads (Minor Ed.) § 305, the author says: "It appears to us that, in view of the danger which necessarily attends such an act, it should be held as a matter of law that it is negligence to attempt to board or to alight from a train while it is in motion; and the question should not be left to the jury unless there are exceptional circumstances tending to excuse or justify the act. And the great weight of authority favors this view. The failure of the company to stop its trains at a station as it ought to do, or to stop it for a sufficiently long time, does not justify a passenger in leaving a moving train; his proper course is to be carried on until the train stops, and if he sustains pecuniary or other loss from being carried beyond his station, his remedy lies in an action for damages." See also 2 Rorer on Railroads, p. 1116; Deering on Negligence, § 95.

The burden was on the plaintiff to prove that he jumped from the train under exceptional circumstances which would justify or excuse such an act of imprudence. The mere circumstance that he was being carried past "Camp Ground" to the next

station at "Old Orchard," which was only a few rods further from his home than Camp Ground station, is plainly insufficient to exonerate him from blame, and if this had been the only excuse offered, it would have been the duty of the presiding judge to direct a verdict for the defendant.

But the plaintiff further says that, in jumping as he did, he acted under the direction or advice of the conductor. It is not in controversy that the conductor made some remark to the plaintiff respecting his manner of jumping either saying, "Jump with the train," or "Don't jump sideways." It is immaterial which form of expression was used. Interpreted in the light of the situation and circumstances, they may reasonably be regarded as having substantially the same import. The conductor saw a man of mature years appear upon the platform of the car evidently preparing to alight, and naturally assumed that the passenger understood the situation, but had determined to take the risk of stepping off of the train. It was plainly the intention of the conductor, not to advise the passenger to leave the train, but to remind him of the safest method of doing so if he was resolved upon making the attempt. It is wholly improbable that the plaintiff understood the remark in any other way. His decision to alight at "Camp Ground" station had already been made; it was not influenced by this remark.

The accident was a very unfortunate one for the plaintiff and his injury and suffering are a source of sincere regret; but the evidence wholly fails to establish any liability on the part of the defendant company, and it is the plain duty of the court to set aside the verdict.

*Motion sustained.    Verdict set aside.*