## LILLA A. HUTCHINS

### *vs.*

## PENOBSCOT BAY & RIVER STEAMBOAT COMPANY.

### Hancock.  Opinion April 3, 1913.

*Accident. Care. Common Carrier. Defect. Duty. Gangway. Knowledge of Defect. Lights. Negligence. Passengers. Ordinary Care. Personal Injuries. Thoughtless Inattention. Trespasser.*

1. The defendant company owed the plaintiff the same duty respecting the condition of the wharf that it owed the daughter who actually became a passenger.
2. In the discharge of this duty to a passenger, the carrier is bound to exercise all ordinary care to maintain its wharf in such a reasonably safe and suitable condition, that the passenger, himself in the exercise of due care, can pass over it in safety.
3. In going upon the defendant's wharf as an escort for her daughter in the case at bar, the plaintiff was not a trespasser, nor a mere licensee to whom the defendant owed no duty.
4. There was a tacit invitation to her, implied by the established custom uniformly recognized and approved by carriers of passengers, as necessarily incidental to the conduct of the business.

5. If she was injured by reason of the negligent failure of the defendant to maintain its wharf in a reasonably safe condition, being herself in the exercise of ordinary care, she is entitled to recover.

On motion by the defendant. Motion overruled. Judgment on the verdict.

This action is to recover damages for personal injuries which the plaintiff sustained by stepping into and through a hole in the defendant's wharf. Plea, general issue. The jury returned a verdict for the plaintiff for $556 and the defendant filed a motion for a new trial.

The case is stated in the opinion.

*W. C. Conary,* for plaintiff.

*Fellows & Fellows,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, BIRD, HANSON, JJ.

WHITEHOUSE, C. J. The plaintiff recovered a verdict of $556 for personal injuries received by stepping through a hole in the defendant's wharf at Bucksport. The case comes to this court on a motion to set aside this verdict as against the law and the 'evidence.

It was not in controversy that on the 24th day of August, 1911, the defendant company was a common carrier of freight and passengers, had the exclusive control of the wharf in question, and occupied it as a regular landing place for its steamboats.

There was evidence in the case, which, if believed, was sufficient to authorize the jury to find the following facts:

About seven o'clock in the evening of August 24, 1911, the plaintiff and her daughter, Mrs. Orcutt, walked out upon the defendant's wharf, the daughter intending to take passage on the defendant's steamer Rockland which was not expected that night until seven o'clock on account of the Bangor fair. The plaintiff was not intending to become a passenger on the boat herself, but accompanied her daughter to the wharf and carried in her hand a bag of apples which she had given to her to take with her on the boat. The daughter carried a suit case in her hand. There was no wait-

ing room at this landing for the accommodation of passengers, and the plaintiff and her daughter walked out across the wharf and stopped a few feet at the right of the front gangway to await the arrival of the boat. The daughter set her suit case down on the wharf, and the plaintiff turned around to set the bag of apples down, when her left foot went through a hole in the planking of the wharf. The defendant's evidence tended to show that this hole was two and one-half inches wide and eighteen inches long, and partially covered by a heavy joist; but the aperture appears to have been wide enough to allow the plaintiff's foot and knee to go down through it. When the accident happened, "It was real dusk," in the language of the plaintiff: "The lights were up in the stores" and the boat was lighted up when it came in; but there were no lights on the wharf. The plaintiff's daughter, Mrs. Orcutt, took passage on the boat, in accordance with her intention when she came down to the wharf, and the plaintiff was taken back to her home in Bucksport in a carriage, accompanied by another daughter.

But it was claimed by the defendant that the place where the accident happened was not designed for the accommodation of passengers. It was contended that the section of the wharf immediately north of the front gangway was intended to be used exclusively as a landing place for freight, and that the waiting place for passengers was on the southerly side of the gangway. It appeared, however, that it was customary for waiting passengers to stand on the north as well as on the south side of this gangway; that the plaintiff had been to the wharf, either as an escort for her daughter or to take passage on the boat herself, as often as once a week, during the entire summer preceding the accident, and that she always went on the north side of the gangway, and saw others waiting there to take passage; that there were no signs directing passengers to go to the southerly side of the gangway; that she never received any intimation from the managers that the northerly side was not a safe and proper waiting place for passengers, although she was personally known to the manager and the captains of the boats; and that at the time of the accident there was, in fact, no freight deposited there which rendered it an unsuitable place for passengers.

Under these circumstances, the defendant company owed this plaintiff the same duty respecting the condition of the wharf that it owed the daughter who actually became a passenger; and in the discharge of this duty to a passenger, the carrier is bound to exercise all ordinary care to maintain its wharf in such a reasonably safe and suitable condition that if the passenger is himself in the exercise of due care he can pass over it in safety. *Bacon* v. *Steamboat Co.*, 90 Maine, 46; *Maxfield* v. *M. C. R. R. Co.*, 100 Maine, 79.

The doctrine contended for by the plaintiff is not only consonant with reason and justice, but is supported by a substantially uniform line of judicial authority. In *Tobin* v. *Railroad Co.*, 59 Maine, 187, it was held that a railroad company is liable to a hackman for an injury received while carrying a passenger to the station by stepping into a cavity in the defendant's platform. In the opinion, the court say: "The hackman, conveying passengers to a railroad depot for transportation, and aiding them to alight upon the platform of the corporation, is as rightfully upon the same as the passengers alighting. It would be absurd to protect the one from the consequences of corporate negligence and not the other. The hackman is there in the course of his business; but it is a business important to and for the convenience and profit of the defendants."

In *McKone* v. *Railroad Co.*, 51 Mich., 601 (17 N. W. 74), the plaintiff went to the railroad station to meet his wife, who was expected to arrive on a night train, and received an injury by falling into a deep hole on a section of the defendant's premises that was used by the company and its patrons as a part of the station grounds. It was held that the plaintiff was entitled to recover. In the opinion of the court, it is said, "The plaintiff was not a trespasser. He was a customer within the meaning of the rule just mentioned. The company was bringing his wife to him and he went to receive and protect her. Had his errand been to receive a bale of goods or a horse, no one would doubt that he had all the rights of a customer, and it seems little less than preposterous to contend that the right was not simply different or inferior, but absolutely wanting, because it was his wife that he went for."

In *Mushrush* v. *Railroad Co.*, 11 Ind. App., 192 (37 N. E., 954), the plaintiff's son, 12 years of age, was sent to the railroad station to meet his sister, and while walking along the platform stumbled

and fell over some obstructions thereon, and was thrown under the wheels of the car and killed. It was held that the defendant was answerable in damages. In the opinion, it is said, "It was the duty of the appellant to keep its station platform in a reasonably safe condition, and to have it reasonably well lighted. For a negligent failure to do this, it was answerable to passengers . . . Nor is this duty limited to actual passengers only, but it includes those who come to meet friends or see them safely off, or, as aptly expressed, to 'Welcome the coming or speed the parting guest.'"

The same rule was also applied in *Doss* v. *Railroad Co.,* 59 Mo., 27; *Atchison R. Co.* v. *Johns,* 36 Kans., 769 (14 Pac. 237); *Hamilton* v. *Railroad Co.,* 64 Texas, 251 (53 Am. Rep. 756); *Izlar* v. *Railroad Co.,* 57 S. C., 332 (35 S. E. 583); and *Esrey* v. *So. Pac. Co.,* 88 Cal., 399. See also 6 Cyc., page 610.

In going upon the defendant's wharf as an escort for her daughter in the case at bar, the plaintiff was not a trespasser, nor a mere licensee to whom the defendant owed no duty. She went there by virtue of a tacit invitation implied by the established custom uniformly recognized and approved by carriers of passengers as necessarily incident to the conduct of the business, and mutually convenient and advantageous to both carrier and passenger; and if injured by reason of the negligent failure of the defendant to maintain its wharf in a reasonably safe condition, while she herself was in the exercise of ordinary care, she is entitled to recover of the defendant appropriate damages for such injury.

The defendant further contends that neither the defendant's negligence nor the plaintiff's care is satisfactorily established by the evidence.

But there was sufficient evidence to support the conclusion of the jury that the defendant's wharf was not reasonably safe at the point where the accident happened, and that the defendant's manager either knew of the existence of the hole through the planking, or by the exercise of reasonable care and diligence might have known it, a sufficient length of time before the accident to have made the necessary repairs.

The plaintiff's testimony respecting the manner in which the accident happened, considered in connection with all the attending circumstances, was sufficient affirmative evidence to authorize the

jury to draw the inference that she conducted herself as ordinarily careful and prudent persons usually do in like situations, and that she was not guilty of "thoughtless inattention."

The damages do not appear to be excessive.

*Motion overruled.*

*Judgment on the verdict.*