No. 20,967.

SAM CANNON, *Appellee and Appellant,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant and Appellee.*

SYLLABUS BY THE COURT.

1. COMMON CARRIERS—*Duty to Persons Assisting Passengers.* In the absence of any regulation forbidding persons to enter trains to assist a passenger, one who goes upon a train for that purpose has an implied permission or license so to do, and the carrier owes him the duty of ordinary care for his protection where it has notice of his purpose and intention in entering the train.

2. SAME — *Licensee Assisting Passenger — Time to Leave Train.* Notwithstanding a finding that a passenger train stopped at a station for a period of five minutes, it is held that it was for the jury to determine under all the facts and circumstances whether one who entered the train to assist a passenger was given a reasonable time to leave the train before it started.

3. SAME—*Licensee Alighting from Moving Train—Contributory Negligence.* The special findings examined and held to show that after discovering the negligence of the defendant, the plaintiff was negligent in attempting in the darkness to alight from the train while it was running at eight miles an hour, and therefore the defendant was entitled to judgment on the findings.

Appeal from Kingman district court; LITTLETON M. DAY, judge *pro tem.* Opinion filed July 7, 1917. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellant.

*John H. Connaughton,* and *H. E. Walter,* both of Kingman, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was to recover for injuries sustained by plaintiff caused by his alighting from a passenger train while it was in motion. The petition alleged that palintiff, a man past sixty years of age, went to the station of the defendant at Kingman to assist his son and his son's wife in taking the train; that he informed the brakeman of his purpose in entering the train, and that the brakeman permitted him to enter with that understanding. It alleged that defendant,

well knowing that plaintiff had not had sufficient time to de-
posit the baggage and return, started its train, and that acting
in pursuance of the orders of the brakeman he attempted to
alight and sustained the injuries complained of; that when he
reached the lower step of the coach, after the train was in mo-
tion, the brakeman informed him that he could alight with
safety and instructed him how to jump. It alleged that the
plaintiff was unacquainted with the operation and movement
of passenger trains and cars, and the consequence of alight-
ing therefrom while they were in motion, and that at the time
his injury occurred he was in the exercise of ordinary care
and in pursuance of the instructions given by the brakeman
upon which he believed he could safely rely. Negligence was
alleged because of defendant's failure to have its depot plat-
form and grounds sufficiently lighted, failing to keep its pas-
senger train stationary until plaintiff had time to alight, and
in the willful failure to exercise ordinary care and stop the
train to allow him to alight, and in ordering and instructing
him to get off. The answer consisted of a general denial and a
plea of contributory negligence.

The evidence for plaintiff showed that he followed his son
and daughter-in-law on the train and said to the brakeman:
"I am just helping the kids on"; that the brakeman did not
say anything and he went in. He set the baggage down and
shook hands with his folks, when his daughter-in-law said:
"Daddy, the train has started." · Plaintiff testified:

"I went out and as I went down the steps I took hold of the upright
rail . . . saw it was so dark . . . I just turned around and reached
up with my right hand. I was facing south. . . . The brakeman
said, 'Turn your face with the car and jump.'"

His testimony was that after getting down on the step he
changed his mind and thought he would go back. He did not
ask anyone to stop the train. One of plaintiff's witnesses had
assisted some other people upon the same train, and after the
train started came out on the platform behind the plaintiff.
This witness testified:

"The brakeman was standing in the vestibule of the coach ahead.
. . . He was facing us. When Mr. Cannon got to the vestibule he
stepped down the steps. . . . The brakeman said to him, 'My God,
turn your head the other way, if you are going to jump.' Mr. Cannon

Cannon v. Railway Co.

turned with his face toward the engine. That was in the opposite direction from the way he started to get off."

The witness looked down the steps and saw that Mr. Cannon had been hurt, and informed the brakeman.

The jury found a verdict in plaintiff's favor for the sum of $800, and returned the following special findings:

"Q. 1. After stopping at the station at Kingman how long did defendant's train in question remain at said station before it started to leave same? Ans. Five minutes.

"Q. 2. At what rate of speed was the train moving at the time plaintiff got off from same? Ans. About eight miles per hour.

"Q. 3. If you find that the negligence of the defendant caused any injury to the plaintiff, state in what respect or respects the defendant was thus negligent. Ans. Defendant's agent started the train before plaintiff could leave the car. Insufficient lights on platform.

"Q. 4. If either the plaintiff or the defendant's agent and employees had exercised ordinary care and caution at the time and place in question, would the injury to plaintiff have been avoided? Ans. If the plaintiff and defendant's agent had both exercised ordinary care and caution, the injury to plaintiff would have been avoided.

"Q. 5. If you find for plaintiff, what, if anything, do you allow for impairment or [of] ability to earn a livelihood in the future? Ans. Nothing.

"Q. 6. State the exact cause of plaintiff's falling in getting off of the moving train. Ans. By getting off of the moving train on the defendant's dark platform.

"Q. 7. If you find that plaintiff started back into the coach after he reached the lower step on the platform, when he first started off, state why he started back into the coach? Ans. Plaintiff stated he thought the train would be stopped.

"Q. 8. Did brakeman Kincaid order or command plaintiff to leave the train, or did he merely advise him as to the safer method of leaving the train at the time? If the brakeman did either state which. Ans. Advised him.

Q. 9. Did the brakeman tell plaintiff in substance, that if he was going to jump face the other way, at a time when the train was running at such speed in the dark that it was clearly of great danger for any one to attempt to get off the train? Ans. Yes.

Q. 10. Did the train arrive and depart from the station on or near about the schedule time on the evening in question? Ans. Yes."

The defendant moved for a judgment against the plaintiff on the special findings of fact, which was overruled, and the defendant appeals.

The defendant insists the findings show that plaintiff was afforded a reasonable opportunity in which to alight from the

train after his errand had been accomplished. This is based on the finding that the train stopped at the station for five minutes. We think it can not be said as a matter of law that reasonable time was given. The question was for the jury to determine under all the facts and circumstances in evidence.

It is further insisted that the findings show the train was moving at the rate of eight miles an hour when the plaintiff attempted to jump off; that he had not asked the brakeman's advice as to the dangers of jumping, and that there is a special finding that the brakeman told him if he was going to jump, to face the other way, which the evidence shows was good advice. For these reasons it is insisted that even if the plaintiff was not afforded a reasonable time to leave the train, still that could not have been the proximate cause of his injuries, but that the injuries were occasioned by his own voluntary act in jumping from the train without any necessity for his doing so, without asking that the train be stopped.

Among the cases cited by defendant in support of this contention is *Hill v. Louisville & Nashville Railroad Co.*, 124 Ga. 243. In that case it was held that, admitting the negligence of the railway company in not affording the plaintiff a reasonable length of time to assist his relatives in boarding the train and for him to alight, the negligence of the company in these respects was not the proximate cause of plaintiff's injuries. In the opinion it was said:

"He knew of such prior negligence of the defendants, and had full opportunity to escape its consequences. With such clear chance, he chose not to avoid, but to risk, the danger of alighting from the moving train." (p. 247.)

To the same effect are *Lucas, Administrator, v. New Bedford and Taunton Railroad Company*, 72 Mass. 64; *Morrow v. Railway Co.*, 134 N. C. 92. In the latter case it was held that the plaintiff upon his own showing was guilty of contributory negligence which was the proximate cause of his injury. In the opinion it was said:

"When he found that the train was in motion and its speed steadily increasing he should have notified the conductor of his situation so that the train could be stopped, or he should have waited until it reached the next station before he attempted to get off. His failure to do so and his attempt to alight from the train, which was then running at the

Cannon v. Railway Co.

rate of three or four miles an hour, was such negligence on his part as defeats his right of recovery. The plaintiff in this respect is certainly not entitled to any greater consideration than a passenger." (p. 97.)

Another case is *Coleman v. Georgia Railroad Co.*, 84 Ga. 1, where it was held that one who found himself in the same predicament as the plaintiff in the present case, must either remain until he can make known his wish to get off, or take the risk of alighting while the train was in motion. The case of *McDonald v. Railroad*, 87 Me. 466, was a case where a passenger was injured in getting off a moving train which had carried him past his station. While it was held to be the obvious duty of the company to stop its train a sufficient length of time to give all passengers desiring to stop there a reasonable opportunity to alight with safety, its failure to do so, it was held, does not justify a passenger in leaving a moving train. In that case the conductor suggested that the passenger should jump with the train, and it was held that this showed plainly the intention of the conductor not to advise the passenger to leave the train, but to remind him of the safest method in doing so if he was resolved upon making the attempt.

The case of *Berry v. Louisville & N. R. R. Co.*, 109 Ky. 727, where, as in this case, one of the grounds of recovery was that the platform was not sufficiently lighted, is relied upon by defendant. In that case it was held to be obvious that plaintiff's injuries were not due to such darkness, but to his own negligence in attempting to alight from the moving train after it had acquired considerable speed; and the fact that it was dark at the time was said to make more evident his own negligence in attempting to get off the train under those circumstances.

The general rule is that, in the absence of any regulation forbidding persons to enter trains to assist a passenger, one who goes upon a train for that purpose has an implied permission or license so to do and that the carrier owes him the duty of ordinary care for his protection where it has notice of his purpose and intention in entering the train. In the absence of any such notice, either actual or constructive, the rule is that the carrier owes him no such duty except not to injure him willfully or wantonly. See Note, 46 L. R. A., n. s., 357; *Hutchins v. Penobscot Bay & River Steamboat Co.*, 110 Me. 369, and note to same case, Ann. Cas. 1914 D. 134, citing cases in sup-

port of the rule that when such an intention is known to the carrier it is bound to exercise reasonable care in allowing such person to alight, and in the absence of contributory negligence on the part of the person injured, the carrier is liable for injuries sustained by him when caused by its failure to exercise ordinary care. See, also, 4 R. C. L., § 503. Other cases are cited in which, however, the railway company did not know of the purpose of the plaintiff in entering the train and that it was his intention to get off.

Upon the strength of these authorities the defendant argues that as a matter of law the special findings show plaintiff was guilty of contributory negligence.

The findings show the train was running at eight miles an hour; findings Nos. 8 and 9 are to the effect that the brakeman "merely advised him [plaintiff] as to the safer method of leaving the train at the time," and told him "if he was going to jump, face the other way," and that this was at a time when the train was running at such speed in the darkness "it was clearly of great danger for any one to attempt to get off the train."

Finding No. 4 reads:

"Q. 4. If either the plaintiff or the defendant's agent and employees had exercised ordinary care and caution at the time and place in question, would the injury to plaintiff have been avoided? Ans. If the plaintiff and defendant's agent had both exercised ordinary care and caution, the injury to plaintiff would have been avoided."

It is insisted that the answer must be construed as a finding that both plaintiff and defendant failed to exercise ordinary care and caution, and that if they had, plaintiff would not have been injured. On the other hand, the construction which plaintiff insists should be given to finding No. 4 is that the jury intended to find that both plaintiff and defendant had not exercised ordinary care, which would be true if either one or the other failed in this respect, and that the finding construed so as to uphold, if possible, the general verdict means that both did not exercise ordinary care because one failed, and that it' was the defendant the jury meant had failed to exercise ordinary care and, therefore, was the only one negligent.

The failure to exercise ordinary care constitutes negligence. The undisputed facts as well as the findings show that after

discovering the defendant's negligence the plaintiff, in attempting to jump from the train in the darkness and while it was running at a dangerous speed, failed to exercise ordinary care. We can not construe the findings as a whole otherwise than as meaning that both plaintiff and defendant failed to exercise ordinary care and therefore that both were negligent. It follows that defendant's motion for judgment on the findings should have been sustained.

There is a cross-appeal in which the plaintiff insists it was error to submit question No. 9 over his objection. He insists that the question could not be answered intelligently either in the negative or affirmative. The jury, however, seems to have answered it intelligently and in accordance with the testimony given by the plaintiff's own witnesses. There was no error in submitting the question.

The judgment is reversed and the cause remanded with directions to sustain the motion.

JOHNSTON, C. J., dissents.