11 N.J. Super. 88 (1951)
78 A.2d 111
BEATRICE B. SHIMP AND GLENN D. SHIMP, PLAINTIFFS-RESPONDENTS,
v.
PENNSYLVANIA RAILROAD COMPANY, A CORPORATION, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1950.
Decided January 4, 1951.
*90 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Baruch S. Seidman argued the cause for respondent (Mr. Irving W. Rubin, attorney).
Mr. Stephen V. Strong argued the cause for appellant (Messrs. Strong & Strong, attorneys).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
The railroad appeals from a judgment entered in Middlesex County Court on a jury verdict in plaintiffs' favor. The railroad argues the trial court erred in denying its motions for dismissal at the end of the plaintiffs' case and for judgment at the end of the whole case. We consider only the ruling denying the motion for judgment. City National Bank & Trust Co. v. Hassler, 9 N.J. Super. 153 (App. Div. 1950).
On the morning of May 2, 1949, the plaintiff, Beatrice Shimp, went with her mother and 26-months-old baby to defendant's railroad station at New Brunswick where her mother was to board a train for Connecticut. She bought her mother a ticket and when the train arrived Mrs. Shimp, carrying her mother's suitcase and the baby, boarded one of the coaches of the 16-car train, and accompanied her mother to a seat "about in the middle of the coach" where she left the suitcase *91 and bid her mother good-bye. She immediately started to leave the coach and walked forward to the vestibule carrying the baby. Her testimony was that the train was standing still as she began to descend the steps to the platform. She said, as "I was stepping down, the first or second" step, "the train gave a severe jerk and I fell off the train." She was holding the baby with both arms and was not using either side handrail.
These facts are taken entirely from Mrs. Shimp's testimony, which was the only evidence offered on her behalf as to the happening of the accident, and which testimony was sharply controverted by the defendant's proofs which tended to show she had jumped from the train as it was moving out of the station. In deciding whether this case was properly submitted to the jury, however, we give Mrs. Shimp the benefit of all the evidence in her favor as well as all inferences favorable to her which can reasonably be drawn from the testimony adduced by both sides. Cirulli v. Licata, 10 N.J. Super. 449 (App. Div. 1950).
What relation obtained between Mrs. Shimp and the defendant? She was not a passenger and had no intention to become one. Her only purpose was to assist her mother. She admitted she did not speak to any railroad employee before boarding or while on the train. She said she saw none at any time, but it is not contended on her behalf that none was present. The fact appears to be to the contrary; the conductor and eight other trainmen who were members of the crew of this train all testified in some detail as to their respective assignments and actions in discharging their duties while the train was at the station. Since she on her own admission entered the train without notice to or knowledge by the defendant as to her purpose, or otherwise of her intent to alight before the train started, and there were no proofs from which such notice or knowledge could be inferred, did she prove a cause of action against the defendant?
While the briefs cite no New Jersey decision which has considered the question, and our own research has discovered *92 none, there is agreement in the decisions outside this State that a person boarding a train to render assistance to a passenger is not a trespasser, but there is disagreement whether the person has the status of a passenger, invitee or licensee. Annotation, 11 A.L.R.2d 1075; Otto v. Milwaukee N.R. Co. (1912), 148 Wis. 54, 134 N.W. 157 (licensee); Barrett v. Brooklyn Heights R. Co. (1919), 188 App. Div. 109, 176 N.Y.S. 590; affirmed, 231 N.Y. 605, 132 N.E. 906 (licensee); Lewis v. Illinois Central R. Co. (1928), 319 Mo. 233, 3 S.W.2d 371 (invitee); Chesapeake & Ohio R. Co. v. Paris' Adm'r. (1910), 111 Va. 41, 68 S.E. 398 (invitee); Arkansas & L.R. Co. v. Sain (1909), 90 Ark. 278, 119 S.W. 659 (invitee); Louisville & N.R. Co. v. Crunk (1889), 119 Ind. 542, 21 N.E. 31 (passenger). We think the sound view is that declared in the large majority of the cases that, while the person is not a trespasser, or mere licensee, a carrier sustains no such relation to a person going on a train to assist a passenger as would impose upon the carrier any duty of extraordinary care and that the law exacts of the carrier toward such person only the duty of ordinary care which is owed an invitee. Lucas v. New Bedford & Taunton Co., 72 Mass. 64 (1856).
A person who goes to a railroad station to assist a passenger in entering a train, goes with at least the tacit invitation of the carrier. While so engaged he does not stand in the relation to the carrier of a bare licensee, but should properly be deemed to have been invited to be there by virtue of the relation existing between the carrier and the intending passenger. The practice of persons not thus intending to be passengers, to assist passengers on and off trains at regular station stops is so well known that we may take judicial notice, in the absence of contrary proofs, that the practice is approved and acquiesced in by the railroad. So, Mrs. Shimp, in going upon this train to render assistance to her mother had an implied invitation to board the train to render the assistance.
The railroad's brief cites Fleckenstein v. Great Atlantic & Pacific Tea Co., 91 N.J.L. 145 (E. & A. 1917), as supporting *93 the view Mrs. Shimp was a mere licensee. That case held that a person was a mere licensee who accompanied another to a merchant's store where the other intended to buy something only for himself and not for the person and the person intended to buy nothing. But see Den Braven v. Meyer Brothers, 1 N.J. 470 (1949). In any event the situations are hardly analogous. The aid given a passenger by a person boarding a train for that purpose is beneficial not only to the passenger but to the carrier as well. Such aid tends to the timely completion of the railroad's business at the station and the maintenance of its operating schedules. In Little Rock & Forth Smith Railway v. Lawton, 55 Ark. 428, 15 L.R.A. 434 (Sup. Ct. 1892), it was said:
"For it is a matter of common knowledge that in the usual conduct of the passenger business it often becomes necessary for those not passengers to go upon cars to assist incoming as well as outgoing passengers, and that a practice has grown up in response to this necessity. While it perhaps arose out of a consideration for the security and convenience of the traveler, it has proven beneficial to carriers, and now prevails in this state, and extensively elsewhere, and is treated as an incident to the business in the conduct of the public and the acquiescence of carriers. It cannot be doubted that it has increased travel and the earnings of carriers, while it has promoted the convenience and security of passengers, and, if it should be abrogated, many persons would be compelled to forego journeys, to the detriment of the carrier and their own inconvenience. We conclude that such attendant performs a service is the common interest of carrier and passenger, and that his entry upon a car is upon an implied invitation, which entitles him to demand ordinary care of the carrier."
Whether the carrier violates the duty of ordinary care, however, when the person is injured while alighting as the train is starting or after it has started is made to depend, according to almost unanimous authority, upon proof of notice to or knowledge by the carrier of such person's intention to alight after completing the purpose to assist a passenger, or of facts justifying the inference the carrier has reason to know of or anticipate such intention. The cases are digested in the Annotation. 11 A.L.R.2d, at pp. 1089 et seq. The *94 reason underlying the rule is succinctly stated in 2 Hutchinson on Carriers (3d Ed.), § 991, as follows: "* * * for without such knowledge they may reasonably conclude that he entered to become a passenger, and cause the train to be moved after giving him a reasonable time to get aboard. He should, accordingly, notify someone in the management of the train of his presence, business or purpose, so as to create some relation to the carrier and thus make it its duty to care for him. And where the carrier's servants have no knowledge or there are no circumstances tending to put them on notice, that a person who has boarded a train to assist another intends to alight before the train starts, they are not bound to hold the train until he has had time to disembark nor to notify him before the train is started."
The brief for the plaintiffs concedes that liability of a carrier is conditioned on proof of such notice, actual or constructive, in respect to "* * * injuries sustained by a non-passenger who attempts to leave a train after it has begun to move," but argues that this is not such a case and contends "a clear jury question was presented as to whether the train was in motion when she began to alight."
If plaintiffs' counsel means by this that proof of the element of notice is required only where the proofs show the person not a passenger is injured while alighting from a moving train and was unnecessary if the jury believed Mrs. Shimp's testimony that the train was not started until after she had begun to descend the steps, no authority cited supports that proposition and we perceive no reason in principle to justify a distinction based on the fact whether the train has started before or is started as the act of alighting is attempted. The prospect of the emergency created by the attempt must in either case be within the railroad's knowledge, or the railroad must have had reason to have known or to have anticipated it, before the carrier can be charged legally with a breach of duty.
Counsel's argument, on the other hand, may be intended to mean that there was a conflict in the proofs whether the *95 train when it jerked, as Mrs. Shimp said, was in fact starting or whether the jerk was merely a motion unconnected with getting the train going; if so, and if we assume, although we do not decide, that such conflict would present a jury question because proof of notice would not be required in the latter circumstance, we find no such conflict in the evidence. Mrs. Shimp's own version was the jerk signalled the start of the train. She was asked on cross-examination, "Well now, you say that the train started with a jerk," and answered, "Yes, sir;" again, "And it did start with a jerk, is that your testimony today?", "Yes, sir;" and on her redirect examination she adopted an answer read by her counsel from her pretrial deposition, "And as you were descending the steps you got to the first or second step from the bottom, the train started, is that right?", "Yes." The railroad's proofs in addition contain no suggestion of a motion of the train before it started to leave the station. It was insisted by the railroad's witnesses that the train started smoothly and without a jerk, but, accepting Mrs. Shimp's contrary testimony, nevertheless, the only permissible inference to be made from the evidence of the train crew is that the train remained stopped after its arrival for a period of something over two minutes, the usual interval at the New Brunswick station, until all of the "fair crowd" admitted by Mrs. Shimp to be getting on and off the train had done so, and first moved when the conductor gave the signal to start the train, which signal, according to his unchallenged testimony, was given at a time when "the platform was perfectly clear."
It is plain the railroad's motion for judgment should have been granted. It would work injustice, not promote justice, to say that this defendant should have held this train in the New Brunswick station for longer than required to do the regular business so that Mrs. Shimp might get off, when no employee of the railroad knew or had reason to know of her presence on the train for the limited purpose she stated or that she was attempting to get off. Had any employee been given notice or had any reason to know that Mrs. Shimp *96 was on board one of the cars for the purpose only of helping her mother, the railroad would have owed her the duty to have delayed the starting of the train a reasonable time for her to get off. But none of the train crew knew any such thing or had reason to know it. Cf. Prosser v. West Jersey & Seashore R.R. Co., 72 N.J.L. 342 (Sup. Ct. 1906); affirmed, 75 N.J.L. 614 (E. & A. 1907).
We need not decide whether Mrs. Shimp's testimony that the train was started with "a severe jerk" was sufficient proof to show the jerk was abnormal or anything more than merely incidental to the proper operation of the train. See Henry v. Public Service Coordinated Transport, 3 N.J. Super. 140 (App. Div. 1949); Cohn v. Public Service Coordinated Transport, 109 N.J.L. 387 (E. & A. 1932). Defendant will not be held liable for her injuries consequent upon a fall alleged to have resulted from its act in having started this train in the absence of facts showing the railroad had knowledge or reason to know of her purpose in boarding the train or of some other fact from which it could be inferred the carrier had timely notice of or could reasonably be expected to have anticipated her presence on the steps in the act of alighting from the coach.
Our conclusion makes it unnecessary to decide the other points argued in the railroad's brief.
Reversed and remanded with direction to enter judgment for the defendant. No costs.