DAWSON, CORBETT and SHELP, a Co-Partnership Composed of MAX DAWSON, WESLEY COR-BETT, and GEORGE SHELP, doing business in the State of Wyoming,

*Plaintiffs and Respondents,*

vs.

LIEURANCE and CANFIELD CONSTRUCTION COMPANY, an Oklahoma Corporation, doing business in Wyoming, RUSSELL L. LIEURANCE JR., THEODORE CANFIELD, LIEURANCE and COM-PANY, Inc.,

*Defendants and Appellants.*

(No. 2477; September 18th, 1951; 235 Pac. (2d) 457)

For the defendants and appellants the cause was submitted upon the brief and also oral argument of Franklin B. Sheldon of Riverton, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief and also oral argument of H. S. Harnsberger, formerly of Lander, but now of Cheyenne.

468

## OPINION

RINER, Justice.

This is an action brought in the District Court of Fremont County by Dawson, Corbett and Shelp, a co-partnership composed of Max Dawson, Wesley Corbett and George Shelp doing business in Wyoming, and hereafter for brevity usually referred to as the Shelp firm against the Lieurance and Canfield Construction Company, an Oklahoma Corporation, also transacting business in said State and for convenience designated herein as the "L" Company, Russell L. Lieurance, Jr., Theodore Canfield and also against Lieurance & Company of Wyoming, a corporation which it appears purchased the assets of the "L" Company. The action appears to be brought to recover alleged overpayments of money by mistake to the "L" Company made by the Shelp firm on account of two contracts, one involving the construction of a sewer line and sewage disposal plant for the town of Saratoga, Wyoming, and the other the construction of some cement foundations for a garage, office building and also buildings for camp use in connection with the erection of a structure known as the Boysen Dam undertaken by the United States Bureau of Reclamation.

It appears that on or about February 24, 1947, the Shelp firm entered into a written contract with the town of Saratoga, Wyoming, for the construction of a sewer system and sewage disposal plant. This contract was awarded to the Shelp firm after competitive bids therefor had been received by the town. Summarized this

contract provided that in consideration of $54,344.80 the Shelp firm agreed to furnish tools, equipment and material and to construct a sewage disposal plant out fall sewer, sewers and appurtenances "all to the satisfaction of the town" and in accord with the plans and specifications which were made a part of the agreement. The construction contemplated was to be "complete and ready for use on or about November 1st, 1947." This installation was to be delivered to said town free and · clear of any liens, claims and demands of any kind for materials, equipment, supplies, labor, accident, death or otherwise. To insure prompt and faithful performance of the contract the Shelp firm was required to, and did, furnish a bond which was to be satisfactory to said town; this bond was to be given for the full amount of the contract price aforesaid.

Thereafter about August 20, 1947, the Shelp firm entered into a written contract with the "L" Company which recited that the firm aforesaid had executed a contract with the town of Saratoga, which contract was designated as the "prime contract" for the purpose of constructing a sewage disposal plant and sewage system for said town of Saratoga and the Shelp firm thereby agreed to sub-let to the "L" Company this entire work. The "prime contract" was made a part of this sub-letting contract and "both parties will be bound by its conditions." Under this sub-contract the Shelp firm agreed to "finance all features of the work consisting of payrolls, materials, all construction and supplies required for the constructions," to secure necessary extension of time required because of inability to secure proper materials required for the completion of the job within the specified time limit and to do certain other things not at this time material. The "L" Company agreed to perform supervision and all labor connected with the completion of the prime contract—furnishing

a certified payroll covering all labor performed during the current day period, to make all purchases of supplies and materials through the Rawlins office of the Shelp firm in order to obtain the best discounts and to co-operate with that firm "and the representative of the town of Saratoga in all means possible to secure efficient and profitable operation." In consideration of the "L" Company's services thus agreed to be performed certain specified payments were to be made to the "L" Company by the Shelp firm and that:

"* * * in the final settlement of this Contract Lieurance and Canfield will receive eighty-five percent (85%) of the total payment less the total of all invoices and payrolls and Dawson Corbett and Shelp will receive fifteen percent (15%) of the total payment."

It appears also that the Shelp firm as suggested above after obtaining a contract with the United States Bureau of Reclamation for the construction of the Bureau's permanent camp site at the Boysen Dam in Fremont County, Wyoming, said construction involving the erection of a number of dwelling houses, garage, office and machine shop, some 23 buildings altogether, the Shelp firm about the latter part of June 1947 entered into an oral contract, the substance of which was as testified to by Mr. Shelp as follows:

"Q. In this oral contract you had with defendants, Mr. Shelp, would you state to the court the terms of that contract?

"A. Yes, the terms of that contract were they were to receive $15.00 a yard for concrete poured. I was to furnish all materials, the forms and aggregate, cement and everything, but I wasn't to furnish them demountable forms as they claim, I never heard of that myself."

In the course of performance of these contracts the parties encountered sundry difficulties and disagreed sharply regarding who was at fault in causing such

difficulties. When the work was completed on each contract and payments on account thereof made, the disagreements of the parties as to what each should receive were so great that this litigation ensued, a settlement between the parties being impossible.

The plaintiff's petition embraced two causes of action; the first one based on the written contract which dealt with the Saratoga Sewer system matter and the second one was grounded upon the oral contract which governed the cement work required to be performed on the Boysen Dam camp installations. On their first cause of action plaintiffs sought to recover the sum of $13,-289.27 as overpayment to the defendants "by mistake" with interest at "7% per annum thereon from the date of such overpayment." In the second cause of action plaintiff claimed the right to recover from the defendants the sum of $9,594.72, also alleged to have been overpaid by the plaintiff "through mistake" together with interest thereon at the rate of 7% per annum from the date of that alleged overpayment.

The separate answer of Lieurance & Company, Inc., filed relative to plaintiff's petition aforesaid was a general denial coupled with an admission that it is a Wyoming corporation and an allegation that "it has no interest in said litigation."

The Lieurance and Canfield Construction Company also filed a separate answer to plaintiff's petition. As to plaintiff's first cause of action this defendant denied "each and every allegation therein contained" which was not subsequently specifically "admitted, denied, or otherwise controverted." It admits that plaintiffs had a contract with the town of Saratoga for the installation of a sewer system for said town and that this defendant "sub-contracted a portion of said work" under a written contract with the plaintiffs which embraced

the provisions hereinbefore set forth. This defendant asserts that plaintiffs did not properly plead the original or "prime contract" with the town claiming that the contract price in that agreement was much more than was pleaded by plaintiffs. Defendant admits that upon completion of the sewerage contract installation, the town of Saratoga paid a sum in settlement of said contract, the amount thereof being unknown to defendant; and that if plaintiff accepted the sum of $55,912.46 in settlement under said contract, such settlement was contrary to defendant's rights inasmuch as it is alleged that the plaintiff and defendant *earned* the sum of $60,762.52 in the performance of said contract. Defendant prayed that the plaintiffs take nothing by their first cause of action. As to plaintiff's second cause of action defendant

"* * * admits that plaintiffs were the owners and holders of a certain contract with the United States for the installation and construction of certain concrete work in and about the building of the Bureau of Reclamation camp at Boysen Dam, in Fremont County, Wyoming, and that by oral agreement with plaintiffs, defendant sub-contracted a portion of said work and thereafter entered upon and performed said sub-contract but defendant denies each and every other allegation of said second cause of action as set forth in plaintiff's petition."

Attached to this answer the defendant, the "L" Company, filed a cross-petition in which were set out four alleged causes of action. Summarizing these we detail them as follows. In the first cause of action in the cross-petition it is asserted that:

"Under the terms of said sub-contract, plaintiffs were to receive 15% of the total earned under the prime contract, or 15% of the $60,762.52 aforesaid, or $9,114.38, and defendant was to receive 85% of the amount earned, less total of all invoices and payrolls, as aforesaid."

Under this construction of the contract this defendant claims on the basis of what was *earned* under the Saratoga contract less payrolls and materials used the sum of $13,105.02 for which defendant asked judgment against the plaintiffs. In the second cause of action of said cross-petition the claim is advanced that plaintiff constructed certain man holes for the sewer system of the town of Saratoga and orally employed the defendant to "supervise the installation of said man holes" and defendant did that and accordingly asserts that the reasonable value of such service was $566.96 which the defendant claims with the statutory interest from the date of the final settlement with the town of Saratoga.

The third cause of action in defendant's pleading just mentioned claimed damages for plaintiff's alleged failure to order necessary materials when requested by defendant and failed to furnish equipment necessary for construction and as a consequence of such failure the work which defendant agreed to do was delayed two weeks until freezing weather had set in and defendant suffered damage through difficulty and extra labor in digging trenches and back-filling same to the extent of $2,000.00 for which additional sum the defendant asks judgment against the plaintiff.

The alleged fourth cause of action of defendant's cross-petition briefly stated that in performing the cement pouring work under the oral contract relative to the Boysen Dam project hereinbefore described, the defendant suffered a net loss and damage in the sum of $3,891.10 which was due to plaintiff's default and failure to perform their part of said contract in certain particulars, viz. failure to furnish dump truck and driver; failure to furnish "adequate prefabricated demountable forms;" failure to deliver and keep on the job adequate and necessary quantities of cement and aggregate; and that these failures delayed the work

until after freezing weather had commenced; requiring defendant to "haul lumber and aggregate" at times to keep the job going, all of which defaults caused defendant additional expense and damage in the total amount of $3,891.10. It is then alleged:

"That defendants total damage as aforesaid exceeds the advance made by plaintiff for and on behalf of defendant during said construction over and above defendant's earnings under said contract by $159.86."

Judgment was accordingly asked by defendant against plaintiffs for the sum of $159.86, the difference between the advances made by plaintiffs to defendants during the progress of the construction work and the damage claimed in this alleged cause of action as suffered by defendant "L" Company as above detailed.

Plaintiffs replied to the separate answer of the "L" Company denying each and every allegation of new matter contained in that answer relative to both and each of plaintiff's first and second causes of action set out in their petition aforesaid. Answering the four alleged causes of action pleaded in defendant's cross-petition, while admitting the merely formal matters set out therein, it for the most part consisted of specific denials of the new matter and claims alleged by the "L" Company in said cross-petition made.

It will be observed that these several pleadings of the parties resulted in issuable matters of fact for trial. Trial was had to the Court without a jury resulting in findings both general and special in favor of the plaintiffs. It may be noted at this time that the judgment rendered by the Court found that the defendant was not entitled to any recovery upon its cross-petition "under either of its several causes of action and that the prayer of defendant's cross-petition herein should be denied as to each and every cause of action in such

cross-petition set forth." The evidence in the case relative to defendant's cross-petition and many of the other issues of fact was determined by the trial court upon irreconcilable and conflicting testimony. We note also that defendant concedes the rule prevailing in this court as to the findings made by the trial court upon contradictory testimony that "where there is substantial evidence to support the finding of the trial court the evidence being in conflict, this court will not interfere," Mulhern et al vs. Mahs 41 Wyo. 214, 284 P. 123. Defendant however says nothing about a similar rule, equally well-established by our previous decisions that: "It must be borne in mind that the appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it." (Jacoby v. The Town of the City of Gillette, 62 Wyo. 487, 494, 174 P. (2d) 505), and cases cited.

It is clear from an exhaustive examination of the record that most of the trial court's findings of fact as embodied in the judgment presently to be examined were upon conflicting testimony relative to the disputed matters of fact or upon evidence which was not disputed or where the submitted evidence as to matters in dispute was wholly lacking or insufficient. Accordingly, we are not inclined to examine specifically the innumerable items in dispute in this litigation. To do so would extend this opinion to unreasonable lengths.

However, we are obliged to take notice of several matters which have been erroneously urged by each of the parties to this law suit. It is insisted on behalf of the defendant relative to the Saratoga written subcontract which it entered into with the Shelp firm relative to that project that the amount *"earned"* by both

plaintiff and defendant should be the basis of calculation of their several remunerations under that agreement. However, it is especially to be observed that that contract does not so provide. Indeed the word "earned" is not to be found within the four corners of that entire instrument. The final settlement under that contract was to be determined as we have seen upon the "total payment" (by the Town of Saratoga) "less the total of all invoices and payrolls."

The plaintiffs also are in error, we think, in calculating the percentage remuneration of the respective parties upon the gross receipts or payments made to the plaintiffs by the Town of Saratoga. As we understand and construe the written contract between plaintiffs and defendant relative to the Saratoga project, before any percentage division should be made, the net payments or receipts from the town to the plaintiff at the time of settlement on July 15, 1948, should be determined by deducting from the gross payments or receipts from the town of Saratoga the total of all invoices and payrolls and when this amount is determined the respective parties should be compensated by an 85% and 15% division thereof respectively. This error seems to have been carried into the judgment.

That judgment omitting formal recital of appearances in person and by counsel and exception by defendants to the Court's action as therein set forth reads as follows:

"* * * the parties having announced themselves ready for trial the Court proceeded to hear the evidence and testimony submitted, heard and considered the arguments of respective counsel and being thus fully advised in the premises, finds generally in favor of the plaintiff and against the defendant; that as to plaintiff's First Cause of Action after deducting and allowing to the defendant all just credits and claims the plaintiff is entitled to recover of and from the defendant Lieurance

and Canfield Construction Company, a Corporation, the sum of Eleven Thousand Two Hundred Sixty-seven and 93/100 Dollars ($11,267.93) together with interest thereon at the rate of seven percent per annum from the 15th day of June, 1948, to the 15th day of December, 1949, which interest sum is computed to be the sum of One Thousand One Hundred Eighty-three and 14/100 Dollars ($1,183.14), and that the plaintiff is entitled to judgment for the full sum, principal and interest, amounting to Twelve Thousand, Four Hundred Fifty-one and 07/100 Dollars ($12,451.07) on the plaintiff's First Cause of Action; that with respect to the plaintiff's Second Cause of Action the Plaintiff is entitled to have and recover of and from the defendant Lieurance and Canfield Construction Company, a Corporation, after allowing all just credits and set-offs, the full sum of Nineteen Thousand, Seven Hundred Twelve and 63/100 Dollars ($19,712.63) less the amount found by this Court to be due and owing to defendants for the pouring of concrete on the Boysen Dam Contract in the amount of 758.35 cubic yards at Fifteen Dollars ($15.00) per yard, or the sum of Eleven Thousand, Three Hundred Seventy-five and 25/100 Dollars ($11,-375.25) leaving a net sum to which the plaintiff is entitled to judgment against said defendant of the sum of Eight Thousand, Three Hundred Thirty-seven and 38/100 Dollars ($8,337.38) together with interest on said sum at the rate of seven percent per annum from the 15th day of December 1947, which said interest is computed to be the sum of One Thousand One Hundred Sixty-seven and 23/100 Dollars ($1,167.23), making the total of principal and interest for which the plaintiff is entitled to judgment against the defendant on plaintiff's Second Cause of Action of the sum of Nine Thousand, Five Hundred Four and 61/100 Dollars ($9,504.61).

"That said defendant is not entitled to any recovery upon its Cross-Petition under either of its several causes of action and that the prayer of defendant's Cross-Petition herein should be denied as to each and every cause of action in such Cross-Petition set forth. "WHEREFORE IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the plaintiff do have and recover of and from the defendant

Lieurance and Canfield Construction Company, a Corporation, upon its First Cause of Action the full sum of Eleven Thousand Two Hundred Sixty-seven and 93/100 Dollars ($11,267.93) principal together with One Thousand, One Hundred Eighty-three and 14/100 Dollars $1,183.14) interest, or a total sum of principal and interest of Twelve Thousand, Four Hundred Fifty-one and 07/100 Dollars ($12,451.07) and that the plaintiff have execution against said defendant for said sum.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED that the plaintiff do have and recover of and from the defendant upon the plaintiff's Second Cause of Action the full sum of Eight Thousand Three Hundred Thirty-seven and 38/100 Dollars ($8,337.38) principal together with interest on said sum at the rate of seven percent per annum from the 15th day of December, 1947, computed to be the sum of One Thousand, One Hundred Sixty-seven and 23/100 Dollars ($1,167.23) and that the plaintiff do have and recover judgment against the defendant Lieurance and Canfield Construction Company, a Corporation, upon plaintiff's Second Cause of Action the full sum, principal and interest, in the sum of Nine Thousand, Five Hundred Four and 61/100 Dollars ($9,504.61), and that the plaintiff have exception upon such judgment against the defendant Lieurance and Canfield Construction Company, a Corporation.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED BY THE COURT that the total judgment herein rendered in favor of the plaintiff and against the defendant upon the plaintiff's First and Second Causes of Action with interest at seven percent per annum upon the amounts found due from the defendant to the plaintiff upon such causes of action to be, principal and interest, in the sum of Twenty-One Thousand, Nine Hundred Fifty-five and 68/100 Dollars ($21,955.68) and that plaintiff have execution against said defendant therefore."

The Town Clerk, as a witness for the plaintiff, stated that the total payments made by the Town of Saratoga to the Shelp firm for the work done on the Saratoga project was $55,912.46 and that no other payments were

made. This amount, the final settlement figure, to which all parties present at the Council Meeting of said town held on July 15, 1948, agreed less $49,835.42 embracing $45,419.49 the amount stipulated by the parties as paid by the plaintiff for payrolls, social security taxes, Workmen's Compensation Insurance and payments by plaintiff to truckers plus disputed but proven items allowed by the Court on conflicting evidence amounting to $4,415.93 results in the sum of $6,077.04 as the net receipts or profit on the work done for the town by the parties hereto. We note complaint is made by defendants that the plaintiffs had no right or authority to settle with the town for the amount the town ultimately paid plaintiffs on July 15, 1948. This is said, as we understand the matter, because defendants urged that the settlement between the town and the plaintiffs should have been for a larger amount than was agreed upon at the town meeting. But defendants did not attend that meeting although they were notified by newspaper notices, by letter from the plaintiffs asking them to attend, and by personal solicitation from the plaintiffs to that end. Defendants knew the purpose for which the meeting of the Town Council was held—yet they stood aloof and made no effort to explain to plaintiffs or the town why the settlement amount agreed upon at the meeting aforesaid was improper. They should have been present and should have taken advantage of the opportunity offered to them to present their views to town and plaintiffs at the time the settlement was had. Not having done so we can see no merit in their contention at this time that the settlement agreement reached by the town and the plaintiffs was wrong.

Both the town and the Shelp firm acted upon the settlement amount agreed upon at that meeting on July 15, 1948. The town made payment of that amount to the Shelp firm and that firm accepted it. It would seem

that the "L" Company should be estopped from claiming that the $55,912.46 settlement payment — an amount greater than that called for by the contract between the town and the Shelp firm—thus made to said firm and received by it, was erroneous. No adequate reason is advanced by the "L" Company why it declined to attend the town meeting aforesaid. If it had attended the meeting it might well be that a larger amount would have been agreed to by the town and the Shelp firm as a proper settlement although the "L" Company appears to have mistakenly taken the position that what the contractor and the sub-contractor *earned* on the sewer system work should be the basis of compensation remuneration payments to them. This position seems to have been taken by the "L" Company despite the fact that the written contract executed by both the Shelp firm and the "L" Company states positively that the "payment" made by the town less the "total of all invoices and payrolls" was the amount to be considered in making final settlement on the contract between the contractor and sub-contractor, as we have heretofore seen.

Recurring now to the result of $6,077.04 as the profit made by the parties on the work done for the town, 85% of that amount is $5,165.48 due from the Shelp firm to the "L" Company. It was stipulated between the parties that previously the "L" Company had already received in cash from the Shelp firm $8,958.40. This amount less $5,165.48 discloses an overpayment of $3,792.92 instead of the sum of $11,267.93, the amount of the judgment as it concerned the Saratoga sewage system project. More concisely the computation should be:

Total received by Shelp firm from
   Town of Saratoga........................................ $55,912.46

| | |
|---|---:|
| Total amount of invoices, payrolls and other items paid by plaintiffs as above set forth | $49,835.42 |
| Amount of profit made by parties on Saratoga sewer system construction job | $ 6,077.04 |
| 85% of $6,077.04 results in the amount due from the Shelp firm to the "L" Company | $ 5,165.48 |
| $5,165.48 deducted from $8,958.40—the amount previously paid to the "L" Company by the Shelp firm discloses an overpayment of | $ 3,792.92 |

Judgment for $11,267.93 less this overpayment requires judgment to be modified by $7,475.01 to *$3,792.92*.

Relative to the Boysen Dam project we must take it as established that there was an oral contract between the Shelp firm and the "L" Company, the terms of which were as testified to by Mr. Shelp as set forth above herein. It was stipulated during the course of the trial in the District Court that the amount paid out by the Shelp firm for payrolls, social security taxes, Workmen's Compensation, materials and supplies was $19,010.45. The stipulation on this matter reserved to the defendant "L" Company, the right to introduce evidence for that Company disputing certain items relative to exchange of labor between the parties, charge for rental equipment and carpenter labor as to cement form building claimed by the Shelp firm. The trial court upon conflicting evidence determined these disputed items against the defendant and in favor of the plaintiffs. Accordingly we start the computation of the amount determined to be due the Shelp firm with the sum last above mentioned. To that sum should be added the sum of $1405.00, the amount of miscellaneous advances made by the Shelp firm less $800.00 disallowed by the court and concerning which no complaint is made

by plaintiff, or $605.00. This results in a total sum expended on the Boysen project by the Shelp firm of $19,615.45. From that amount should be deducted the sum of $11,375.25 as a credit to the "L" Company for 758.35 cubic yards of cement poured at $15.00 per cubic yard as stipulated by the parties hereto, the result of this computation being $8,240.20 for which judgment should be allowed instead of $8,337.38 as fixed by the trial court which was $97.18 too much. More concisely this entire computation results as follows:

Stipulated amounts paid out by the Shelp firm for payrolls, taxes, compensation, materials and supplies ................................. $19,010.45

Miscellaneous claimed advances from the Shelp firm to the "L" Company were $1405.00 of which court disallowed $800.00 which resulted in such advances being the sum of $605.00; this amount added to the stipulated amount afore-said discloses the total cost of Boysen work as ........................................................ $ 605.00
                                                                      $19,615.45

Less credit for 758.35 cubic yards of cement poured by the "L" Company at $15.00 per cubic yard ................................. $11,375.25

Resulting in an overpayment of ...................... $ 8,240.20

But judgment was given for $8,337.38 or $97.18 in excess, requiring judgment to be modified to that extent or $8,240.20 as to the Boysen Dam work.

From an inspection of the judgment before us we find that the district court allowed interest on the several amounts it found to be due to the plaintiff for overpayments for certain periods of time previous to the date of the judgment which was entered January 10, 1950. These amounts should not be allowed under the authorities presently to be reviewed and under the circumstances shown by the record before us. Conse-

quently, the total judgment in plaintiff's favor should be for $3,792.92 on account of the Saratoga project plus the sum of $8,240.20 due on account of the Boysen Dam project or $12,033.12 with interest thereon at the regular statutory rate from January 10, 1950, the date of the entry of the judgment in the District Court herein.

The litigation before us is really an accounting action involving mutual claims for unliquidated damages and items which were sharply disputed by both parties which neither would concede as due from one to the other and which required evidence to be submitted and the determination of the District Court had before it was established as certain what was due from one to the other. Under such circumstances and under the authorities to which we now call attention we think interest amounts were, as indicated above, erroneously allowed to plaintiffs.

In Knutson v. Lasher et al, 219 Minn. 594, 18 N.W. (2d) 688 the Supreme Court of Minnesota said:

"Absent contractual provision as to the time from which interest shall be payable, the rule is that, where parties agree to submit the amount of a demand to the decision of others or a court, interest is not allowable prior to the date of the decision. Easterbrook v. Farquharson, 110 Cal. 311, 42 P. 811; Matter of Trask v. Peekskill Plow Works, 6 Hun. N. Y., 236; McCullough v. Clemow, 26 Ont. 467; 25 C.J.S., Damages, § 52 b. note 30, p. 540.

In Lincoln Lumber Company et al vs. Keeter 167 Ga. 231, 145 S.E. 68, 70 an action for "an account and settlement" this was said in concluding the opinion filed:

"A debt is liquidated when it is certain how much is due and when it is due. An unliquidated claim is one which one of the parties to the contract or transaction cannot alone render certain. Roberts v. Prior, 20 Ga. 561. 'The general rule * * * is that interest is not recoverable upon unliquidated demands, but is allowable

only after such demands shall have become merged in a judgment. In order to recover interest, there must be a fixed and determinate amount which could have been tendered and interest thereby stopped.' 33 C.J. 211, § 71, b. Where parties agree to submit the amount of a demand to the decision of others, or to be determined by the court, interest will not be allowed prior to the date of such decision. 33 C.J. 212, § 77 g."

This court in Binning v. Miller 60 Wyo. 114, 146 P. (2d) 527, 535 has pointed out in that case that:

"The contention is made that plaintiff was not allowed interest prior to the judgment on the amount of money found to be due him. But until the judgment, now under review, was rendered, no one knew how much each of the parties was legally required to pay. That being so it is sufficient to call attention to the fact that 33 C.J. 211, § 71, says that 'the general rule, as elsewhere stated in this work, is that interest is not recoverable upon unliquidated demands, but is allowable only after such demands shall have become merged in a judgment. In order to recover interest there must be a fixed and determinate amount which could have been tendered and interest thereby stopped.' See also the recent case of Johnson v. Hanover Fire Insurance Company, Wyo., 137 P. (2d) 615, and cases there cited."

In United States v. Davidson 71 Fed. Sup. 401, 403, the United States District Court for the northern district of Idaho held that:

"Where there were conflicting claims between subcontractors and contractor and surety on contractor's payment bond, no interest would be allowed until judgment was entered. 40 U.S.C.A. § 270a, (a) (2), (b)."

The case of In re Deming's Guardianship 192 Wash. 190, 73 P. (2d) 764, 782 involved the accounts of the guardian of three minors which were disputed. In disposing of the claims of the parties this was said relative to the matter of allowance of interest:

"It has been held that, where an accounting is neces-

sary in order to determine the amount due, the demand is unliquidated, and no interest may be recovered (Bull v. Rich 92 Minn. 481, 100 N.W. 213, 101 N.W. 490, Minton v. Mitchell 89 Cal. App. 361, 265 P .271), and that the same rule should be followed in cases of mutual accounts, each of which is contested (Palmer v. Stockwell, 9 Gray (75 Mass. )237; Davis v. Walker, 18 Mich. 25; Brewster v. State, 170 Wash. 422, 16 P. (2d) 813).

In Fiorito et al vs. Goerig et al 27 Wash. (2d) 615, 179 P. (2d) 316, 319, discussing a disputed account matter the appellate court used this language:

"As stated above, the members of the joint venture could not agree regarding nearly everything in the account, except the matter of the amount which the appellants had earned for the building of some roads and as to that, there were substantial back-charges which appellants denied. Respondent Goerig, in view of the contentions made by the other members of the joint venture, that there was nothing due the appellants upon their account, would have paid any amounts other than were paid to the appellants at his peril. Nothing remained to be done in view of the hopeless disagreement of the parties except to submit the matter to the court to determine whether any sum was due appellants or whether they had been over-paid.

" 'Where, however, the demand is for something which requires evidence to establish the quantity or amount of the thing furnished, or the value of the services rendered, interest will not be allowed prior to the judgment.' Wright v. City of Tacoma, 87 Wash. 334, 151 P. 837, 844.

"See also Stover v. Winston Bros. Company, 185 Wash. 416, 430 55 P. (2d) 821 and Ferber v. Wisen, 195 Wash. 603, 610, 82 P. (2d) 139.

"Appellants are not entitled to allowance of interest prior to the judgment."

The court in reviewing on appeal the case of City of Richmond v. Henrico County et al, 185 Va. 176, 37 S.E. 2d 873, stated its opinion in that case relative to the matter we are here interested in as follows:

"We are of the opinion that the learned trial court was in error in allowing interest at all. The statute, which is alone the source of any recovery, does not provide for the payment of interest and consequently the appraisers' awards do not bear interest, certainly until the awards become a finality which, in the absence of adjustment, cannot be until the matter has run the gamut of the courts. Until such event, the claim is unliquidated. There would be no sum certain upon which interest could be computed.

"It was said in the case of Stearns v. Mason, 65 Va. 484, 494, 24 Gratt 484, 494: 'This court has repeatedly held that when accounts were unliquidated and disputed between the parties, interest ought not to be allowed.'

"After citing a number of cases in support of the above statement, the court said further: 'These cases show that the court ought not to allow interest when the claim, though just, is doubtful, or where the amount is unliquidated and uncertain.' "

So the Supreme Court of Michigan in re Snow's Estate 319 Mich. 333 29 N.W. 2d 826, 828 concerning a disputed account said this:

" 'Interest does not run on an unsettled or unliquidated account unless there is an express or clearly implied agreement that it shall do so.' from syllabus in Sweeney v. Neely, 53 Mich. 421, 19 N.W. 127."

After a careful study of the involved and disputed account items shown in this record concerning which the parties were in hopeless discord it is our view that the judgment below should be modified as hereinabove indicated and as so modified it will be affirmed. A retrial of the disputed issues and items would, as it seems to us, only result in a more hopeless disagreement than the record now presents, the lapse of time and possible loss of oral testimony as well as dimmed recollection of important witnesses would hardly improve the matter.

The cause will be remanded and the judgment as modified to meet the views herein expressed will be affirmed.

Costs herein shall be taxed one half to each of the parties hereto including transcript. No costs to be allowed for briefs.

*Modified and Affirmed.*

KIMBALL, C. J., and BLUME, J. concur.