HOMER S. HARDEE and HESTER HARDEE,

*Plaintiffs and Respondents,*

**vs.**

J. W. MILLER,

*Defendant and Appellant.*

(No. 2543; August 12th, 1952; 247 Pac. (2d) 149)

For the defendant and appellant the cause was submitted upon the brief of Henry A. Burgess of Sheridan, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief and also oral argument of R. G. Diefenderfer, of Sheridan, Wyoming.

## OPINION

RINER, Justice.

This is a proceeding by direct appeal to review a judgment entered by the district court of Sheridan County in an action wherein Homer S. Hardee and

Hester Hardee were plaintiffs, being now respondents, against J. W. Miller as defendant, and now the appellant. This action was begun about October 28, 1950, in said district court. For convenience the parties will usually be referred to hereinafter as plaintiffs and defendant or by their respective surnames.

Summarized briefly the petition alleges that on July 25th, 1949, and while the plaintiffs were living at Lovell, Wyoming, the plaintiff, Homer S. Hardee, was the owner of an undivided 1/7th interest in lots 1, 2 and 3 south half (S½) northeast quarter (NE¼) and north half (N½) southeast quarter (SE¼) of section 1, Township 55, North, Range 85 West of the 6th Principal Meridian in Sheridan County, Wyoming; that Homer S. Hardee and J. W. Miller were on the date last above mentioned brothers-in-law, but that an action had been brought by Miller's wife, a sister of Homer S. Hardee, for a divorce against her husband, J. W. Miller; that on July 26th, 1949, the plaintiffs executed and delivered to the defendant a warranty deed of Homer's interest as aforesaid in said property; that this deed was obtained from plaintiffs by false and fraudulent representations as follows:

## "IV.

"That at said time and place, the defendant represented to the plaintiffs that he was in severe financial straits, that unless he could immediately raise the amount of $6,000.00 to pay on his obligations, he and his wife, would lose all their property, including their home in Sheridan, that he could not obtain said money unless he gave collateral security therefor in the form of a real estate mortgage on additional property, that the only real property available for such purpose was the above described real property owned by the plaintiff Homer S. Hardee and that, to accomplish the purposes aforesaid, it was necessary for these plaintiffs to execute and deliver to him a Warranty Deed to said property."

## "V.

"That the plaintiffs then and there believed said representations and told the defendant that the said Homer S. Hardee would then and there call defendant's wife by telephone and tell her that the plaintiffs would make and execute to the defendant the Warranty Deed requested by him but that the defendant thereupon dissuaded said Hardee from so doing by representing to him that defendant's wife knew nothing of the alleged danger of property loss, which statement was true, that she was on the verge of a nervous breakdown and that any knowledge communicated to her regarding such danger would result in serious effects upon her; that because of such representations said Hardee did not call his sister."

Plaintiffs' petition then alleged that:

## "VI.

"That each and all of the representations so made by the defendant to these plaintiffs was false, except that defendant's wife knew nothing of the alleged danger of property loss, as the defendant then and there well knew, and were designed and intended by him to deceive and defraud the plaintiffs into conveyance by them to him of the title to said real property."

That plaintiffs did not know that these representations were false but believed them to be true and relied upon them and were deceived and defrauded thereby; that on the next day, July 26th, 1949, the plaintiffs by their warranty deed as stated above conveyed to the defendant, Miller, the full title which previously had been owned by Homer S. Hardee. That this deed was delivered to the defendant without any consideration paid by him and thereafter duly recorded; that plaintiffs as above recited have been defrauded out of the title to said real estate.

The prayer of the petition is for judgment against the defendant, Miller, cancelling said warranty deed and that it be expunged from the court records of

with to reconvey said real property to the plaintiff, Sheridan County, and that defendant be ordered forth-Homer S. Hardee; that the defendant be charged with the costs of this suit.

The defendant answered said petition by a general denial and also by pleading an agreement executed by the plaintiffs and defendant at the time of the execution of the deed aforesaid wherein it was provided that the grantors could within one year of the date of the execution of said agreement redeem the real estate above described conveyed to the defendant upon their payment to him of the sum of $7,000.00. Laches was also pleaded.

The plaintiffs filed a reply admitting the execution of this agreement; but alleged it was obtained by the defendant by means of the same fraudulent representations as the deed above described.

Trial of the issues presented was had to the court and the findings of fact made by the court were the following:

"I.

"That by a clear preponderance of the evidence all the facts alleged in the Petition of the plaintiffs are true, except that the value of the real property interest obtained by the defendant from the plaintiffs was $6,-500.00, on July 26, 1949, which the Court hereby finds was established by the evidence and is true.

"II.

"That the plaintiffs knew not later than December 2, 1949, that the representations made to them by the defendant on July 25, 1949, had been, in fact, false and fraudulent; that they commenced this action on October 28, 1950.

"III.

"That the allegations set out in paragraph 1 of defendant's Second Defense in his Amended Answer are

true but that the instrument referred to therein as 'Exhibit A' was a part of the fraudulent transaction described in the Petition of the plaintiffs.

### "IV.

"That the allegations set out in paragraph II of said Second Defense are untrue.

### "V.

"That the plaintiffs had opportunity between December 2, 1949 and July 26, 1950, to institute a suit to cancel the deed described in their Petition and that the defendant had no knowledge or notice that the plaintiffs would assert their rights in connection therewith, until this action was commenced.

### "VI.

"That on or about August 21, 1950, the real property interest described in said Petition was sold and conveyed by the defendant to a bona fide purchaser, for the consideration of $6,500.00 without notice to such purchaser of any fraud in connection with the title of the defendant to such property or of any rights existing in or claimed by the plaintiffs or either of them, in such property.

### "VII.

"That the plaintiff, Hester Hardee, did not own any interest in such real property and executed the deed thereto only as the wife of the plaintiff, Homer Hardee, the sole owner thereof."

that due to the inability to restore the real property under the circumstances above described the court deemed it necessary to award damages to the plaintiff, Homer S. Hardee, in the amount of the value of the property on July 26, 1949, in the sum of $6,500.00; that there was no laches on the part of the plaintiffs in bringing this action.

As a result of the facts found and the conclusions deduced the court rendered its judgment as follows:

"That the plaintiff, Homer S. Hardee, have of and recover from the defendant, J. W. Miller, the sum of $6,500.00 with interest at 7% per annum from July 26, 1949, together with all costs of the plaintiffs herein, which are hereby taxed at $8.70, for all of which judgment is hereby awarded."

Appellant admits that the evidence in this case is conflicting and our examination of the record confirms us in the belief that the defendant's admission in that respect is based on fact. That being so we are bound to recall what this court has said so many times that it is hardly necessary to refer to the rule once more that:

"Where there is substantial evidence to support finding of trial court, and evidence is in conflict, Supreme Court on appeal will not interfere." (Dawson et al v. Lieurance et al, 68 Wyo. 465, 235 P. (2d) 457, and cases cited.)

3 Am. Jur. 470, section 901 says:

"The weight of conflicting evidence in an action tried by the court without a jury is exclusively for the trial court, and the appellate court must accept as true that which tends to sustain the decision and reject any testimony in conflict with it."

5 C.J.S. 739, section 1657 reiterates the view that:

"As stated somewhat differently, it is the rule that, where the trial court has heard conflicting evidence and considered and determined the weight thereof, the appellate court will not re-examine the question or go beyond the conclusions thus reached, or substitute its conclusions on the facts for those of the lower court, but will resolve any conflict in favor of the judgment, and give to the findings of the trial judge the greatest or utmost weight."

The facts disclosed by the record are substantially these:

On July 25, 1949, the plaintiffs—husband and wife—resided at Lovell, Wyoming; at that time the defend-

ant, J. W. Miller, was the husband of Hardee's sister, Goldie, she and Miller having been married about the year 1908. These parties as such husband and wife did not get along very well and as a consequence the wife had filed suit for a divorce from Miller on July 14, 1949, and Miller knew the action was pending against him then. At that time she was in excellent health; was not suffering from any nervous affliction whatsoever and was able to talk over the long distance telephone without being disturbed mentally. On July 25, 1949, the defendant and his son drove over the Big Horn mountains from Sheridan with the idea of seeing Hardee who was then engaged in mining operations in the mountains northwest of Cody at a location which was not easily accessible. Miller carried with him an unsigned deed to the real property aforesaid which he had had drawn up in Sheridan. It became unnecessary for Miller to go the full distance to Hardee's mine as he met the latter on the road. Miller and Hardee thereupon returned to Lovell where Miller spent the night as the Hardee's guest. During that evening Miller told them that he had taken the trip from Sheridan for the purpose of obtaining Hardee's interest in the ranch property described above—the 1/7th interest—so that he might use it as collateral security in obtaining a loan of $6,000.00. Miller told the Hardees that he was in serious financial straits and unless he could get this collateral and obtain the loan he and his wife, Hardee's sister, would lose everything they had including their home in Sheridan. These statements were untrue and known by Miller at the time to be so. Hardee expressed a desire to call his sister by telephone and talk the matter over with her, but was dissuaded from doing so by Miller who said that his wife's mental condition was bad, and she would have a complete nervous breakdown if such a telephone conversation was undertaken. Miller assured Hardee that the latter's sister knew nothing

about his (Miller's) financial difficulties. These statements of Miller about his financial troubles were untrue but were believed by the Hardees to be true and for that reason they agreed to execute the deed and transfer the title of the real estate interest from Hardee to Miller; the latter assuring them that this interest would be returned to them as soon as Miller did not need it further.

On the morning of July 26, 1949, the Hardees went with Miller to the office of an attorney in Lovell and executed the deed. No consideration therefor passed from Miller to the Hardees. At the same time an agreement was drawn up and signed by the Hardees and Miller which fixed the consideration of $7,000.00 for Hardee to pay to Miller within a year if Hardee desired the return of the property. The Hardees testified that the purpose of the agreement was to fix a valuation on the property so that Miller could get his loan of $6,000.00. When these transactions were completed Miller took the deed, returned to Sheridan and recorded it in the office of the County Clerk of Sheridan County.

Miller's wife ultimately obtained a divorce from him and she thereafter married a man whose name was Grubb.

Sometime afterward in 1950 Miller sold this property to his son for a cash payment of $6,500. This deed was not recorded until after the present action was instituted. The record establishes that the son was an innocent purchaser for full value as the district court concluded, as stated above.

The Hardees did not learn of the falsity of Miller's representations until the fall of 1949 and thereafter instituted this suit to recover the property of which Miller had allegedly defrauded them.

Complaint is made by appellant that the amount of $6,500.00 fixed by the court as the value of the property at the time the false statements were made and deed executed. But the agreement signed by Miller as aforesaid fixed a value of $7,000.00 on the property and he sold it to his son the next year for $6,500.00. We cannot say that the district court was in error in ruling as it did. Miller himself testified that he thought if he got $6,000 or $7,000.00 for the property that that would be satisfactory to him.

It is insisted that the evidence did not support the district court's conclusion that a fraud had been perpetrated by Miller on Hardee. In view of what has been heretofore set forth we are unable to perceive that this is so. The trial court saw and heard the parties on the witness stand and chose to believe the Hardees. This it was within its jurisdiction to do. The case of Goldberg v. Miller et al, 54 Wyo. 485; 93 P. (2d) 947 to which our attention has been directed by appellants is not in point. The facts in that case are radically different from those presented in the case at bar. Here the proof was ample to show that Miller got the deed to the property by telling falsehoods to the Hardees. The record is very clear on this point and under the rule of appellate procedure above set forth we must decline to interfere. Such being our views on the merits of this case it becomes unnecessary to pass on respondent's motion to dismiss the proceeding. As many times previously announced by the court we prefer to decide cases on the merits, if possible. The judgment of the district court of Sheridan County should be affirmed and an order to that effect should be entered.

*Affirmed.*

BLUME, C. J. and ILSLEY, J., concur.