Earl L. MARSH and Vernena M. Marsh,
Appellants (Defendants below),

v.

Lucille H. BUTTERS, Appellee
(Plaintiff below).

No. 2965.

Supreme Court of Wyoming.

May 8, 1961.

Raymond B. Whitaker, Casper, for appellants.

Harry E. Leimback and J. F. Mahoney, Casper, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The defendants, who are husband and wife, agreed to purchase an apartment house in Casper, Wyoming, from plaintiff for a total purchase price of $49,712.45. The terms of the agreement were expressed in a purchase agreement dated March 26, 1959. Said purchase agreement provided that buyers had made a $10 down payment and that they assumed and agreed to pay an existing mortgage upon which there was an unpaid balance of $18,932.84. With respect to the remaining balance buyers agreed to assign all of their right, title and interest to seller "in that certain instrument termed 'Second Contract for Deed,' as partial payment in the amount of $30,769.61, which is further identified as being in escrow with the Phoenix Title & Trust Company, 201 Second Ave., Yuma, Arizona." Other provisions of the agreement which are pertinent to a decision in this case are contained in paragraph 12 which reads as follows:

"12. The buyers have represented to seller that the business known as Roll Mercantile & Enterprises, Inc., is a well established, going concern, and

fully capable of making the payments heretofore mentioned in said 'second contract for deed', now in escrow with Phoenix Title & Trust Company, Yuma, Arizona, and based upon said representation seller has accepted buyers interest in and to said property. If it is determined that buyers have misrepresented said property, then this purchase agreement shall be set aside, and the parties returned to the status they had before this agreement, except that buyers shall compensate seller for any damages sustained by her as a result of said misrepresentation, including any rentals lost therefrom. In the event it becomes necessary for seller to resort to the Courts as a result of misrepresentation, if any, and seller prevails therein, buyer shall pay a reasonable attorneys fee to seller's attorney."

Undisputed evidence in the case shows that the second contract for deed referred to in the purchase agreement between plaintiff and defendants had come into existence as a result of these facts: The defendants, Mr. and Mrs. Marsh, were previously purchasing the Tamarak Trading Post business at Roll, Arizona, from George W. Stinger and wife. Said business was known as Roll Mercantile & Enterprises, Inc. Then on December 20, 1958, defendants had resold such business to Charles Keirsey, Jr. and Sonia C. Keirsey, husband and wife, under the aforesaid second contract for deed. According to their contract, the total sale price to the Keirseys was $105,000 payable in this manner:

$ 1,000.00 as a down payment, to apply on inventory.
$ 1,000.00 due January 20, 1959, to apply on inventory.
$10,000.00 with interest at 6%, in payments of $443.21 or more per month, to apply on inventory.
$69,621.50 with interest at 6%, in payments of $400 or more per month, payable to Phoenix Title & Trust Company for Stinger.

$23,378.50 with interest at 5%, in payments of $97.41 per month for the first 2 years, being interest only, and thereafter $300 or more per month.

Mrs. Keirsey testified that a note for $2,200 had been given to the Marshes to cover sums owing to them aside from the monthly payments. The monthly payments added up to $940.62 for each month during the first two years. Thereafter they would total $1,143.21 per month. None of these payments were made, except for payments to Phoenix Title & Trust Company, and the undisputed evidence establishes that Mr. and Mrs. Keirsey went broke and left the business entirely during the month of June, 1959. On June 24, 1959, attorneys for the Keirseys notified Mr. Marsh by letter that Keirseys were rescinding their contract because of alleged misrepresentations made prior to the execution of such contract. He was advised that he might have possession of the property at any time and was told where the keys could be obtained. Also, on July 31, 1959 Mr. and Mrs. Stinger declared a forfeiture of their contract for nonpayment of installments and notice thereof was served upon Mr. and Mrs. Marsh, with a copy to Mrs. Butters.

In the meantime plaintiff notified Mr. Marsh by a letter from her attorney, dated June 1, 1959, that she had decided to rescind her sale under the provision in paragraph numbered 12 of the purchase agreement. Demand was made for a return of her property together with rents and other benefits received. The letter then stated: "Will you please indicate to us what instruments you need, if any, to restore you to the same status you were in prior to the execution of this purchase agreement."

The Marshes refused to deliver up the premises held by them and action for possession and damages was then commenced. Said action resulted in a judgment favorable to plaintiff for recovery of possession of the apartment house, for an accounting of rents and profits, for an attorney's fee of

$500 and for costs. From this judgment defendants have appealed.

The defendants by their agreement represented to plaintiff that the business in Arizona, which plaintiff had not seen, "is a well established, going concern, and fully capable of making the payments heretofore mentioned in said 'second contract for deed.' " Said agreement then provided that if it is determined that buyers have misrepresented said property, then this purchase agreement shall be set aside, and the parties returned to the status they had before this agreement. It is apparent from the judgment entered, and especially from special findings of fact made by the trial judge at the request of defendants, that it was so determined by the district court. This court will not undertake to determine or say whether defendants did or did not misrepresent said property. It must necessarily, however, pass upon the question as to whether there was sufficient evidence to support the findings of the trial court, at least with respect to one of the three things represented about the Arizona business.

■ The general presumption on appeal is in favor of findings made by the lower court, and it is well settled that this court will assume that all evidence in appellee's favor is true; leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith; and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. Holbrook v. Continental Oil Company, 73 Wyo. 321, 278 P.2d 798, 802; Dulaney v. Jensen, 63 Wyo. 313, 181 P.2d 605, 606; Parker v. Belle Fourche Bentonite Products Co., 64 Wyo. 269, 189 P.2d 882, 886; Dawson, Corbett & Shelp v. Lieurance & Canfield Const. Co., 68 Wyo. 465, 235 P.2d 457, 461; Metcalfe v. Winchester, 72 Wyo. 142, 262 P.2d 404, 407; Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 506, 177 P.2d 204, 169 A.L.R. 502. Also, where there is substantial evidence on appeal to support the findings of the trial court and the evidence is conflicting, the Supreme Court will not interfere. Hardee v. Miller, 70 Wyo. 204, 247 P.2d 149, 151; Dawson, Corbett & Shelp v. Lieurance & Canfield Const. Co., supra; Skanadore v. Anderson, 76 Wyo. 424, 304 P.2d 1072, 1073.

■ Considered in the light of these principles of review, the evidence in this case is such that we could not do otherwise than to hold that the court which tried the matter was justified in determining that defendants had misrepresented the Arizona property. There was testimony to the effect that the business lost money every month after December 20, 1958, except from December 20 to January 1. At other times Mrs. Keirsey said that there was not sufficient money to pay out payments such as the contract called for. From the time Mr. and Mrs. Keirsey commenced operating the business to the time it was closed their best day was described as a gross of $168 and the lowest as $12.05. Mrs. Keirsey claimed that she and her husband lost $5,000 to $8,000 between December 20, 1958 and the time they closed in June 1959, and that they went broke, flat. Moreover, according to the evidence, Mr. Marsh had been informed by the Keirseys in January 1959 and again shortly after March 15, 1959 that the business was not making money and in fact that it was losing money.

Appellants attempted to overcome plaintiff's evidence by showing that the business had made money under previous managements. They suggested that such business had a good potential and that the fault was with the Keirseys who poorly managed it. However, the appellants themselves had put Charles Keirsey and his wife into possession of this business, and it necessarily had to be judged on the basis of what it was under that management and control, rather than what it had been or could be under different circumstances.

When the transaction between plaintiff and defendants was completed, defendants executed an assignment pertaining to their interest in the Arizona business and this assignment was placed in escrow. Said assignment was never delivered to plain-

tiff and she had nothing to reassign or reconvey. Although the defendants complain that they were not returned to their status before the agreement, they have not made known to plaintiff or to the district court or to this court what action they consider necessary for that purpose. Plaintiff's offer to furnish whatever instruments were needed in this connection was made in her letter of notification dated June 1, 1959. Also, the Keirseys in their notification of June 24, 1959 tendered possession back to the Marshes.

■ At the time of trial Mrs. Keirsey came from Nevada to testify for plaintiff. However, she was not present at the time of plaintiff's case in chief and was offered as a rebuttal witness after the close of defendants' case. In the meantime, defendants had made a motion to dismiss following plaintiff's case. The motion was overruled, and defendants had proceeded with their evidence. They now contend that plaintiff's evidence was not sufficient to support the judgment without the testimony of Mrs. Keirsey, and that their motion to dismiss following plaintiff's case should have been allowed. In a similar situation in the case of Peterson v. Johnson, 46 Wyo. 473, 28 P.2d 487, 91 A.L.R. 723, our court said that it was at least doubtful whether the movant did not (by proceeding with his own evidence) waive the error in the ruling on his motion, if error it was. We feel that we might more correctly say that error, if any, in overruling a motion for dismissal at the close of plaintiff's case is cured where the defendant introduces evidence and where all of the evidence at the time both parties rest is sufficient to make out a case for the plaintiff. It has been generally held in most jurisdictions considering the matter that error in overruling a motion for dismissal at the close of plaintiff's case is cured where defendant introduces evidence which supplies the defects in plaintiff's proof, or where the evidence at the time both parties rest, introduced by either party, warrants a submission of plaintiff's case to the jury or trier of the facts. See New York Life Ins. Co. v. Murdaugh, 4 Cir., 94 F.2d 104; People v. Keith Ry. Equipment Co., 70 Cal.App.2d 339, 161 P.2d 244; J. C. Penney Co. v. Gravelle, 62 Nev. 434, 155 P.2d 477, 144 P.2d 487; Melnick v. Bowman, 102 Colo. 384, 79 P.2d 368; Mellon v. Kelly, 99 Mont. 10, 41 P.2d 49; Wellington v. Mutual Ben. Health & Accident Ass'n, 39 N.M. 98, 40 P.2d 630; Withey v. Hammond Lumber Co., 140 Cal.App. 587, 35 P.2d 1080; Jones v. Northwestern Auto Supply Co., 93 Mont. 224, 18 P.2d 305; Shimp v. Pennsylvania R. Co., 11 N.J.Super. 88, 78 A.2d 111, affirmed 8 N.J. 1, 83 A.2d 521; Home Owners Loan Corporation v. Brazzeal, 62 Ga.App. 683, 9 S.E.2d 773; 89 C.J.S. Trial § 667, p. 512.

We have reviewed and find no error in trial rulings of the trial court which are complained of and which have to do with a denial of a request for continuance made during the progress of trial and the overruling of a motion to strike and disregard testimony considered by the movant to be biased and prejudiced. Also, in view of our holding that there was sufficient evidence to support the finding that defendants did misrepresent the Arizona business, and since the remedy followed by the trial court was the one specifically provided for in the purchase agreement, it becomes unnecessary to discuss other points raised by said defendants and having to do with plaintiff's right to such remedy.

The judgment of the district court should be and it is affirmed.

Affirmed.