**EXPLORATION DRILLING COMPANY,**
Appellant (Employer below),

v.

**Bill D. GUTHRIE,** Appellee
(Employee below).

(In the Matter of the Injury to Bill D. Guthrie, an Employee of Exploration Drilling Company—Workmen's Compensation.)

No. 3071.

Supreme Court of Wyoming.
April 10, 1962.

Ilsley & Lubnau and Thomas E. Lubnau, Gillette, for appellant.

Thomas Morgan, of Morgan & Brorby, Gillette, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

An appeal has been taken by Exploration Drilling Company as employer from a workmen's compensation award which was made by the District Court in Campbell County to Bill D. Guthrie, an injured employee. Guthrie was awarded fifty-percent permanent partial disability payable out of the Industrial Accident Fund of the state. He was also reimbursed for medical expenses incurred in the amount of $25.

The employer-company was engaged in drilling an oil well in Campbell County when the incident out of which the claim arose occurred. Guthrie had been employed in the capacity of a roughneck in connection with the drilling and had worked for five days. On April 2, 1960, while the rig was being prepared for drilling, this employee was in the cellar under the rig engaged in nippling up a blowout preventer. The testimony indicated that he had been standing on a five-gallon can. In some manner he fell from the can into mud and water which was at the bottom of the cellar. The workman claims he reached back for a sledge hammer and fell over backwards. The company claims that he had an epileptic seizure and fell into the mud and water because of such seizure.

In any event, the witnesses seemed to agree that he was discovered at the bottom of the cellar in pretty much of a helpless condition, and that he was lifted out by other workers. He was taken to the doghouse on the floor of the derrick and seems to have remained in a disabled condition for an hour or more. A working shift then ended and his fellow employees took him to his brother's home in Gillette. Within a couple of hours his condition became serious, and his brother took him to the hospital.

Dr. Richard C. Baughman, the physician who treated Guthrie, considered his condi-

tion grave. He was in a semiconscious condition, and the doctor described shortness of breath, a cyanotic color, a throat that was red, a bubbling moist rales in both lung fields in his chest, and a heart rate of 120 per minute. It was the testimony of Dr. Baughman that the patient's condition was due to the aspiration of mud into the trachea and lungs and stomach. Mud and foreign matter were removed from the throat, and the trachea was aspirated repeatedly with a suction machine. According to the doctor, pinkish bloody-looking secretions mixed with a muddy-looking substance was obtained. From the redness of the throat and the the appearance of the matter removed, the physician assumed that the mud contained a caustic type of substance. However, no analysis of the mud was made.

Dr. Baughman spent several hours with Guthrie at the time of the initial treatment, and Guthrie thereafter remained in the hospital for treatment, a period of 17 days. He was then discharged to be followed on an out-patient status. The doctor saw him periodically after that every two to four weeks for the first few months and then every two or three months up to the time of trial.

The doctor did not discharge the workman to go back to work, because he felt the patient needed a period of convalescence in order to try to help him to get some strength back and to get over his condition. It was the opinion of the workman's physician, Dr. Baughman, based on X-ray findings and physicial examination, that the workman had a permanent disabling condition, and that this condition was due to the episode in the pool of mud at the time of the accident. In both his written report which was filed in the case and in his oral testimony at the trial, this physician claimed that the patient would suffer permanent fifty-percent disability from residual scarring of both lungs, or pulmonary fibrosis.

Dr. William C. Robb, the medical expert of the employer, examined Guthrie and testified at the hearing. For the most part his testimony may be disregarded as far as our consideration on appeal is concerned. Counsel for the company concedes that an order of award in a compensation matter will not be disturbed on appeal if there is substantial evidence to support it. He also understands and agrees that the workman as appellee is entitled to have the evidence in support of his claim taken as true and given every favorable inference which fairly and reasonably may be drawn from it. White v. Maverick Production Co., 63 Wyo. 452, 182 P.2d 818, 821. Also, as we have repeatedly said, testimony favorable to the unsuccessful party in conflict therewith may be disregarded. Marsh v. Butters, Wyo., 361 P.2d 729, 731.

In this particular case, however, it appears on the face of the record that there is probably as much in the testimony of Dr. Robb to corroborate Dr. Baughman as there is to contradict him. Dr. Robb agreed, for example, that he was satisfied that Guthrie had chronic pulmonary disease, although he was not satisfied as to how much functional impairment there was. That, he thought, was the only argument. Then, Dr. Robb went on to admit and agree that there was fifty-percent disability, but he claimed he could not tell how much of the disability was due to preexisting conditions and how much was due to what happened April 2, 1960.

Of course, it is understandable that the trial judge may have considered that Dr. Robb, who examined the employee at the instance of the company, for the purpose of testifying, was not as familiar with the history of the case as Dr. Baughman. In any event, the judge was privileged to accept Baughman's testimony and the claimant's testimony if he chose to do so, especially since Dr. Robb did not claim or suggest that any of the disability was in fact due to a previous condition.

Weighing the evidence before us on the accepted standard of review for appellate courts, it is apparent that the disability award must be affirmed unless there has been a failure of proof in connection with the fact that the disability resulted directly from an injury incurred in the employment.

The employer argues that the disability resulted from a preexisting idiopathic condition and that it did not result from the workman's employment.

■ In dealing with this question, it must be kept in mind that Guthrie testified that he reached back for a sledge hammer and fell. None of the witnesses testified that there was a seizure, but two of the workmen did say that Guthrie was "thrashing" around in the cellar, raising up to a crouching position and falling down again. Dr. Baughman did not recognize a seizure and was not aware of anything concerning Guthrie's history of epilepsy until later. The evidence as a whole was such that the lower court would have been justified in concluding that epilepsy had nothing to do with the accident.

■ It is well settled in Wyoming that compensation is not made to rest upon the condition of health of the employee or upon his freedom from liability to injury through a constitutional weakness or latent tendency. Also it matters not, as far as the right to compensation is concerned, whether the weakness or liability to injury has come about by disease or existed from birth. In re Scrogham, 52 Wyo. 232, 73 P.2d 300, 307; In re Frihauf, 58 Wyo. 479, 135 P.2d 427, 432–433.

An award is made, as was pointed out in the Scrogham case, for an injury which is a hazard of the employment. This hazard applies to the particular employee in his condition of health. It is not necessarily that hazard which might apply to a healthy or average employee. The compensation act makes no distinction between healthy or diseased employees. In re Madden, 222 Mass. 487, 111 N.E. 379, 382, L.R.A.1916D, 1000.

■ The employer complains that an erroneous allowance of $10 was made to Guthrie for an examination by Dr. Claude Grizzle of Cheyenne. The objection to this allowance is based upon the assumption that Dr. Grizzle's examination did not relate to the injuries involved in the compensation matter. There is ample in the record, however, to show that such examination did relate, and the trial court had the right, from the evidence, to so conclude.

We find the award sufficiently supported by the law and evidence here involved, and such award is accordingly affirmed.

Affirmed.